IN THE SUPREME COURT OF NORTH CAROLINA

No. 451A19

Filed 11 December 2020

IN THE MATTER OF: K.P.-S.T. and B.T.-F.T.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 23 September 2019 by Judge William B. Davis in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 23 November 2020, but was determined upon the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*Maggie D. Blair for appellee Guardian ad Litem.*

*Mary McCullers Reece for respondent-appellant father.*

ERVIN, Justice.

Respondent-father B. T., Jr., appeals from an order entered by the trial court terminating his parental rights in his minor children K.P.-S.T. and B.T.-F.T.[1] After careful consideration of respondent-father's challenge to the trial court's termination

---

[1] K.P.-S.T. and B.T.-F.T. will be referred to throughout the remainder of this opinion as "Kenny" and "Bill," respectively, which are pseudonyms used to protect the juveniles' identities and for ease of reading.

order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

Kenny and Bill were born on 11 April 2017. The Guilford County Department of Health and Human Services received a report of neglect indicating that the children had tested positive for the presence of cocaine at birth. After the report was closed and the case was transferred to in-home services, the children's mother entered into an updated safety agreement on 21 June 2017. On 26 June 2017, DHHS received another report of neglect alleging that there had been an incident involving domestic violence between the mother and respondent-father that had resulted in the mother's arrest for committing a misdemeanor assault in the presence of a minor.

On 27 June 2017, DHHS filed a petition alleging that Kenny and Bill were neglected and dependent juveniles and obtained the entry of an order placing the children in the nonsecure custody of DHHS. In its petition, DHHS alleged that the parents had violated the safety plan by consuming alcohol in the presence of the children, by abusing other impairing substances, and by engaging in incidents of domestic violence in the presence of the children. The issues raised by the petition came on for hearing before Judge Betty J. Brown on 28 September 2017, at which time the results of paternity testing that established respondent-father's status as the biological father of the children were presented for the court's consideration. On 6 March 2018, Judge Brown entered an order finding Kenny and Bill to be neglected

juveniles based upon the information contained in the petition and certain stipulations entered into by DHHS and the parents.[2]

A service agreement proposed by DHHS had been presented to respondent-father on 21 July 2017. At that time, respondent-father declined to sign the proposed service agreement until he had had an opportunity to discuss it with his attorney. Respondent-father failed to attend a meeting that had been scheduled for the purpose of finalizing his service agreement with DHHS in August 2017 on the grounds that he had been unable to get off of work. The service agreement was eventually approved as a result of the 28 September 2017 adjudication and disposition hearing and signed by respondent-father on 16 October 2018. As a result of his service agreement, respondent-father was required to address issues relating to substance abuse; domestic violence; housing, environmental, and other basic physical needs; parenting skills; employment and income management; and visitation and child support.

After a permanency planning hearing held on 2 August 2018, Judge Lora C. Cubbage entered an order on 20 August 2018 that established the permanent plan for the children as one of adoption, with a secondary plan of reunification. On 19 March 2019, DHHS filed a petition seeking to have the parental rights of both parents in the children terminated based upon neglect, N.C.G.S. § 7B-1111(a)(1); willful

---

[2] The dependency allegation was voluntarily dismissed by DHHS.

failure to make reasonable progress toward correcting the conditions that had led to the children's removal from the home, N.C.G.S. § 7B-1111(a)(2); and willful abandonment, N.C.G.S. § 7B-1111(a)(7). The termination petition came on for hearing before the trial court on 5 August 2019, with the hearing having concluded on 6 August 2019. On 23 September 2019, the trial court entered an order terminating respondent-father's parental rights[3] in the children on the basis of a determination that his parental rights were subject to termination for neglect, N.C.G.S. § 7B-1111(a)(1), and willful failure to make reasonable progress toward correcting the conditions that had led to the removal of the children from the home, N.C.G.S. § 7B-1111(a)(2),[4] and a determination that the termination of respondent-father's parental rights would be in the children's best interests. Respondent-father noted an appeal to this Court from the trial court's termination order.

In seeking relief from the trial court's termination order before this Court, respondent-father argues that the trial court erred by determining that his parental rights in Kenny and Bill were subject to termination. According to well-established North Carolina law, termination of parental rights proceedings involve the use of a

[3] Although the trial court terminated the mother's parental rights in the children in the same order, she did not seek relief from the trial court's order before this Court. As a result, we will refrain from discussing the proceedings relating to the mother in any detail in this opinion.

[4] The trial court did not find that respondent-father's parental rights in the children were subject to termination based upon willful abandonment pursuant to N.C.G.S.§ 7B-1111(a)(7).

two-stage process. N.C.G.S. §§ 7B-1109, -1110 (2019). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6, 832 S.E.2d 698, 700 (2019) (quoting N.C.G.S. § 7B-1109(f)). "If [the trial court] determines that one or more grounds listed in [N.C.G.S. §] 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile[s] to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110 (2015)).

"This Court reviews a trial court's adjudication decision pursuant to N.C.G.S. § 7B-1109 'in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law,' with the trial court's conclusions of law being subject to de novo review on appeal." *In re N.D.A.*, 373 N.C. 71, 74, 833 S.E.2d 768, 771 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). "[A] finding of only one ground is necessary to support a termination of parental rights." *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019).

In the brief that he has submitted for our consideration on appeal, respondent-father has refrained from challenging the sufficiency of the evidentiary support for any of the trial court's findings of fact. Instead, respondent-father argues that the trial court's findings of fact fail to support its conclusions that respondent-father's parental rights in the children were subject to termination on the grounds of neglect, N.C.G.S. § 7B-1111(a)(1), and willful failure to make reasonable progress toward addressing the conditions that had led to the children's removal from the home, N.C.G.S. § 7B-1111(a)(2). According to respondent-father, both N.C.G.S. § 7B-1111(a)(1) and N.C.G.S. § 7B-1111(a)(2) "require[ ] the court to consider [his] progress in addressing the conditions that led to the children's removal," and that, contrary to the decision that is reflected in the trial court's termination order, he made "reasonable substantive progress in addressing [those] issues."

According to N.C.G.S. § 7B-1111(a)(1), a trial judge may terminate a parent's parental rights in a child in the event that it finds that the parent has neglected his or her child in such a way that the child has become a neglected juvenile as that term is defined in N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2019). A neglected juvenile is "[a]ny juvenile less than 18 years of age . . . whose parent . . . does not provide proper care, supervision, or discipline" or "who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019).

> [I]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child at the time of the

> termination proceeding. In the event that a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible. In such circumstances, the trial court may find that a parent's parental rights in a child are subject to termination on the grounds of neglect in the event that the petitioner makes a showing of past neglect and a likelihood of future neglect by the parent.

*In re N.D.A.*, 373 N.C. at 80, 833 S.E.2d at 775 (cleaned up).[5] "When determining whether future neglect is likely, the trial court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020) (citing *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) (quoting *In re M.J.S.M.*, 257 N.C. App. 633, 637, 810 S.E.2d 370, 373 (2018)).

After acknowledging the existence of a prior adjudication that the children were neglected juveniles, respondent-father asserts that the children were removed from the mother's home as the result of prenatal exposure to cocaine, parental

---

[5] As we have noted today in our opinion in *In re R.L.D.*, No. 122A20, slip op. at 5 & n.3 (N.C. Dec. 11, 2020), a showing of past neglect and a probability of future neglect is not necessary to support a determination that a parent's parental rights in a juvenile are subject to termination on the basis of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) in light of the fact that such a determination is also permissible in the event that there is a showing of current neglect.

substance abuse, and incidents of domestic violence and argues that he made reasonable progress toward addressing those problems. A careful review of the record and the trial court's unchallenged findings of fact persuades us that the trial court did not err by reaching the opposite conclusion and determining that there was a likelihood that the children would be neglected in the event that they were placed under respondent-father's care.

In Finding of Fact No. 16, the trial court stated that the "current ongoing neglect by [respondent-]father is evidenced by the fact that he has not complied in an adequate and consistent manner with his "service agreement" before describing the deficiencies in the manner in which respondent-father attempted to comply with the obligations that he assumed in accordance with his service agreement. As an initial matter, we note that respondent-father refused to sign the proposed service agreement when it was presented to him on 21 July 2017 and did not do so until 16 October 2018, which was over a year later. On the day upon which he did sign it, respondent-father was encouraged to begin working upon satisfying the requirements of his service agreement immediately in order to prevent the loss of his parental rights in his children.

As far as respondent-father's progress with respect to substance abuse-related issues is concerned, the trial court found that, while respondent-father did complete a substance abuse assessment on 26 June 2017, he had failed to comply with the recommendations that had resulted from that assessment. In addition, respondent-

father failed to submit to requested random drug screens between September 2017 and June 2019. Although respondent-father did submit to one drug screen in January 2019, which was negative, he provided the required urine sample more than twenty-four hours after the initial request had been made, an action which precluded this drug screen from being treated as random in nature. Respondent-father also failed to complete the assessment or treatment that was necessary in order for him to regain his driver's license, which remained in a state of suspension as the result of a 2004 conviction for driving while subject to an impairing substance. As a result, the trial court found that respondent-father had not complied with the substance abuse-related component of his service agreement.

After determining that respondent-father had not been the aggressor in the domestic violence incidents in which he had been involved with the mother, DHHS modified the domestic violence-related component of his service agreement so as to require respondent-father to work with a therapist in order to become better educated about the effects of domestic violence upon children. As of February 2019, respondent-father had not begun this educational process. For that reason, the trial court found that respondent-father had not complied with the domestic violence-related component of his service agreement.

In spite of the fact that the service agreement required him to address housing-related concerns, respondent-father failed to consistently update his social worker concerning his living situation. Although he provided a copy of his lease to his social

worker in February 2019, respondent-father failed to act in a similar fashion after he moved during the summer of 2019. Respondent-father also failed to show that he had working utility service at his residence and never submitted to a home visit despite the fact that the social worker made multiple attempts to organize one. As a result, the trial court found that respondent-father had failed to comply with the housing-related component of his service agreement.

As far as the component of his service agreement relating to parenting skills is concerned, respondent-father did not obtain the required parenting evaluation. After failing to respond when efforts were made to schedule the required evaluation in 2017, respondent-father scheduled an appointment for the purpose of obtaining the evaluation in January 2019. However, respondent-father later cancelled this appointment and never rescheduled it. Similarly, after failing to respond when efforts were made to schedule parenting classes for him in 2017, respondent-father did complete an assessment associated with these classes in January 2019 and attended two class sessions. However, respondent-father failed to complete the parenting program. As a result, the trial court found that respondent-father was not in compliance with the parenting-related component of his service agreement either.

In addressing the components of respondent-father's service agreement relating to visitation and child support, the trial court found respondent-father had sporadically visited with Kenny and Bill until November 2017. However, he had not visited with the children since that time. In addition, respondent-father did not send

letters, cards, or gifts to the children during the six-month period immediately prior to the filing of the termination petition and did not have consistent contact with the social worker, having had no contact with the social worker between October 2018 and January 2019 and having had only sporadic, bi-weekly contact with the social worker after that time.

On 1 February 2018, respondent-father was ordered to pay $301 each month in child support and an additional $20 each month toward an existing arrearage. Respondent-father paid $73.16 in support in July 2019 and had a $69.83 arrearage. Although respondent-father's fiancée expressed a willingness to assist him in complying with the requirements of his service agreement, the trial court found that he had been out of compliance with its requirements even after the couple had become engaged in October 2018. As a result, the trial court found that respondent-father had failed to comply with five out of the six components of his service agreement.[6]

In seeking to persuade us that the trial court's findings of fact show that he had complied with the provisions of his service agreement, respondent-father argues that he was no longer having contact with the mother, who had caused the children's prenatal exposure to cocaine and had been the aggressor in the incidents of domestic

---

[6] The trial court did find that respondent-father had complied with the employment-related component of his service agreement given that he was employed full time and had provided paycheck stubs verifying his employment status to the social worker.

violence in which he had been involved with the mother. In addition, respondent-father argues that there had been no police reports reflecting domestic violence in his current home. Moreover, respondent-father notes that his substance abuse evaluation indicated that he had nothing more than a "mild" problem with alcohol and cannabis, that he had incurred no new drug or alcohol related charges, and that the drug screen to which he had submitted in January 2019 was negative. Reduced to its essentials, however, respondent-father's argument is tantamount to a request that we reweigh the evidence. As this Court's precedent clearly states, even if the evidence would have supported a contrary decision, "this Court lacks the authority to reweigh the evidence that was before the trial court." *In re A.U.D.*, 373 N.C. at 12, 832 S.E.2d at 704.

After a careful review of the trial court's findings and the record evidence, we hold that the trial court's findings of fact support its determinations that respondent-father had previously "neglected the juveniles," that it is likely that this earlier neglect would be repeated if respondent-father became responsible for the children's care, that respondent-father is "currently neglecting the juveniles," and that respondent-father's parental rights in the children were subject to termination on the basis of neglect pursuant to N.C.G.S. § 7B-1111(a)(1). In view of the fact that the trial court did not err by finding the existence of at least one ground for terminating his parental rights in the children and the fact that the existence of a single ground for termination suffices to support the termination of a parent's

parental rights in a child, *see In re A.R.A.*, 373 N.C. at 194, 835 S.E.2d at 421, we need not review respondent-father's challenge to the trial court's determination that his parental rights in the children were also subject to termination for willfully failing to make reasonable progress toward correcting the conditions that had led to the children's removal from the home pursuant to N.C.G.S. § 7B-1111(a)(2). As a result, since at least one ground exists to support the termination of respondent-father's parental rights in the children and since respondent-father has not challenged the lawfulness of the trial court's determination that the termination of his parental rights would be in the best interests of the children, we affirm the trial court's termination order with respect to respondent-father.

AFFIRMED.