IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-47

No. 123A21

Filed 6 May 2022

IN THE MATTER OF: A.N.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 19 January 2021 by Judge Emily Cowan in District Court, Henderson County. This matter was calendared in the Supreme Court on 18 March 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Assistant County Attorney Susan F. Davis for petitioner-appellee Henderson County Department of Social Services.*

*Ryan H. Niland and John R. Still for Guardian ad Litem.*

*Edward Eldred for respondent-appellant father.*

EARLS, Justice.

¶ 1 Respondent-father appeals from a trial court order terminating his parental rights in his daughter, A.N.H. (Annie).[1] Respondent was found by the trial court to have completed a required substance abuse assessment, completed 20 hours of substance abuse treatment, completed a parenting program, attended 78 of 80 possible visits with Annie, paid child support in an amount consistent with the child

[1] We use a pseudonym to protect the juvenile's identity and for ease of reading.

support guidelines, resided in a home safe and appropriate for Annie, attended court regularly, and maintained requested contact with the social worker. Petitioners sought to terminate respondent's parental rights based on the fact that respondent failed some of the many drug screens he submitted to between 2018 and 2020 and failed to submit to others.

We find that some of the trial court's findings of fact are not supported by the record, while others are. Thus, the issue here is whether the findings of fact that are supported by clear, cogent, and convincing evidence in the record are sufficient to support the trial court's conclusion that grounds existed to terminate respondent's parental rights for neglect and failure to make reasonable progress under the circumstances to correct the conditions that led to Annie's placement in foster care. We conclude that the findings of fact supported by clear, cogent, and convincing evidence in the record are insufficient to support the trial court's conclusion that respondent's parental rights in Annie were subject to termination. Accordingly, consistent with our precedents, we remand this matter for further proceedings rather than reversing the judgment and remanding for dismissal of the petition. *See In re N.D.A.*, 373 N.C. 71, 84 (2019) (vacating and remanding for further proceedings where factual findings were insufficient to support grounds for termination).

## I.    Background

When Annie was born on 9 April 2018, her cord blood tested positive for

cocaine, and she experienced suboxone withdrawal. Annie spent two weeks in the hospital being treated with methadone before being discharged to the custody of her mother. On 24 April 2018, the mother entered into a safety plan with Henderson County Department of Social Services (HCDSS) in which she agreed to continue with her substance abuse treatment and to reside with Annie at the maternal grandmother's home.

Around 13 May 2018, the mother moved with Annie to temporary housing with a friend after being kicked out of the maternal grandmother's home. The mother missed multiple substance abuse group therapy sessions throughout May 2018 and was discharged from her suboxone treatment on 4 June 2018 after failing to attend her treatment

On 5 June 2018, HCDSS filed a petition alleging Annie to be a neglected juvenile. The petition alleged that the mother did not have stable income, was unemployed, and was not attending treatment for her substance abuse or mental health issues. Respondent was not listed on Annie's birth certificate. He was listed as the putative father on the petition, in which it was alleged that respondent provided no care or support for Annie, was unemployed, and had a history of criminal activity, drug use, and domestic violence with Annie's mother.

In early July 2018, the mother could no longer stay with her friend. On 10 July 2018, she and Annie spent the night at respondent's home; they spent the next two

nights at the Rescue Mission. On 13 July 2018, HCDSS was unable to locate the mother or Annie. The social worker contacted respondent looking for the mother, but respondent did not have any information regarding her whereabouts. HCDSS located Annie later that day in the care of respondent and his family. At this point paternity had not yet been established.

¶ 7 HCDSS obtained nonsecure custody of Annie on 13 July 2018 and filed a supplemental petition alleging neglect. The petition alleged that the mother expressed concern about respondent being left alone with Annie because of his domestic violence history. Respondent submitted to paternity testing on 30 July 2018 and was found to have a 99.99% probability of being Annie's father. In a child support order filed on 28 September 2018, respondent acknowledged that he was Annie's father.

¶ 8 Following a hearing, the trial court entered a Consent Adjudication Order on 13 September 2018 concluding that Annie was a neglected juvenile based on the parents' stipulated facts. In a separate disposition order entered 17 January 2019, the trial court ordered respondent to do the following in order to achieve reunification with Annie: obtain a comprehensive clinical assessment (CCA) from a certified provider and provide the assessor with truthful and accurate information; follow and successfully complete all the recommendations of the CCA; submit to random drug screens; complete an anger management/domestic violence prevention program;

successfully complete a parenting class that addresses the ability to identify age-appropriate behaviors, needs, and discipline for the juvenile; cooperate and pay child support; attend visitations and demonstrate the ability to provide appropriate care for the juvenile; obtain stable income sufficient to meet the family's basic needs; obtain and maintain an appropriate and safe residence; maintain face-to-face contact with HCDSS; and provide HCDSS with updated information and sign any releases of information necessary to allow the exchange of information between HCDSS and the providers. The court granted respondent one hour of supervised visitation per week.

¶ 9 The trial court held a permanency planning hearing on 11 April 2019. In an order entered 17 May 2019, the court set the permanent plan for Annie as reunification with a secondary plan of adoption. The court found that respondent obtained a CCA, completed a parenting class, obtained sufficient income, and began mental health treatment on 7 November 2018. From July 2018 to the date of the hearing, respondent submitted to nine drug screens, seven of which were negative. However, respondent tested positive for marijuana on 18 July and 23 October 2018 and did not take requested drug screens on 28 August 2018 and 8 January 2019. The court ordered respondent to comply with the components of his case plan and allowed him six hours of unsupervised visitation per week.

¶ 10 On 3 June 2019, HCDSS filed a Motion for Review requesting respondent's visitation be changed back to supervised visits after respondent's 21 May 2019 hair

follicle test came back positive for amphetamines, methamphetamines, and cocaine. Following a hearing on 11 July 2019, the trial court entered an order on 3 September 2019 continuing the permanent plans.

¶ 11 Respondent himself requested additional hair follicle tests on 25 and 26 September and 2 October 2019. However, respondent testified that he could not submit samples for these tests because he was working two hours away in Maggie Valley and could not get to the testing site before it closed. On 10 October 2019, a second hair follicle test came back positive for methamphetamine, cocaine, and benzoylecgonine, the main metabolite of cocaine. Respondent's unsupervised visitation was suspended on 15 October 2019 due to his positive hair follicle screens.

¶ 12 In a review order entered 14 February 2020, the trial court changed the permanent plan to adoption with a secondary plan of guardianship, finding that respondent had not made adequate progress within a reasonable time under the plan. The court found that respondent had not engaged with individual therapy to comply with his substance abuse requirements, and that he was extremely dependent on his grandmother for assistance in caring for Annie. The court also found that respondent had threatened family members who offered to help with Annie or provide information to HCDSS about Annie. The court allowed respondent a minimum of one hour of supervised visitation per week.

¶ 13 On 12 March 2020, HCDSS filed a motion to terminate respondent's parental

rights on the grounds of neglect and willful failure to make reasonable progress to correct the conditions that led to Annie's removal from the home.[2] N.C.G.S. § 7B-1111(a)(1)–(2) (2021). Following multiple continuances, the trial court held a termination of parental rights hearing on 15 October, 12 November, and 10 December 2020. On 19 January 2021, the trial court entered an order concluding that HCDSS had proven both alleged grounds to terminate respondent's parental rights and that termination of respondent's parental rights was in Annie's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed.

## II.  Analysis

On appeal, respondent challenges the trial court's adjudication of grounds for termination of his parental rights under N.C.G.S. § 7B-1111(a)(1) and (2). He contends that of the twenty-seven findings of fact relied upon by the trial court, the entirety of finding of fact 38 and significant portions of eleven others are not supported by the evidence and that the remaining findings do not support the trial court's conclusions that grounds existed to terminate his rights.

We review a trial court's adjudication that grounds exist to terminate parental rights "to determine whether the findings are supported by clear, cogent and

---

[2] HCDSS also sought to terminate the parental rights of Annie's mother, but she did not appeal and is not a party to this appeal.

convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re R.G.L.*, 2021-NCSC-155, ¶ 12. "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)). "Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *Id.* "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 16        A trial court may terminate parental rights if it concludes that the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as one "whose parent, guardian, custodian, or caretaker . . . does not provide proper care, supervision, or discipline . . . [or whose parent, guardian, custodian, or caretaker] allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a

showing of a likelihood of future neglect by the parent. When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.

*In re R.L.D.*, 375 N.C. 838, 841 (2020) (cleaned up).

A trial court also may terminate parental rights if it concludes that a parent has willfully left his or her child in foster care or in a placement outside the home for more than twelve months "without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). In order for a respondent's noncompliance with a case plan to support termination of parental rights, there must be a nexus between the components of the court-approved case plan allegedly not met and the conditions which led to the child's removal from the home. *In re B.O.A.,* 372 N.C. 372, 387 (2019). The "reasonable progress" standard does not require respondent "to completely remediate the conditions that led to" the child's removal. *In re J.S.,* 374 N.C. 811, 819 (2020).

Respondent contends that the trial court's findings that are supported by the record evidence do not support its determination that there was a likelihood of future neglect and do not support the determination that he failed to make reasonable progress to correct the conditions that led to Annie's removal. Because the trial court's legal conclusions regarding both grounds for termination were based on the same

facts, we will first examine respondent's contentions regarding the trial court's findings and then analyze the two grounds for termination found by the trial court.

## A. Findings of Fact

In support of its determination that respondent's parental rights were subject to termination based on neglect and failure to make reasonable progress, the court made the following pertinent findings of fact:

> 29. Father has failed to make reasonable progress under the circumstances in correcting those conditions which led to the removal of the juvenile or on the requirements to obtain placement and custody of the juvenile. Specifically, father has not made significant or reasonable progress on his case plan in the past two and one-half years as shown by the following:
>
> a. Father completed his [CCA] through Family Preservation Services on 4 June 2019 and was recommended to successfully complete substance abuse treatment and individual therapy. Father was also recommended to abstain from all illicit substances.
>
> b. Father was referred to Highland Medical, but Highland Medical would not accept his insurance. Therefore, HCDSS referred father back to Family Preservation Services to obtain a Substance Abuse assessment. Instead of obtaining a substance abuse assessment at Family Preservation Services, Father indicated he would pay for half of the cost if HCDSS would pay for half the cost, and HCDSS agreed.
>
> c. Father obtained a substance abuse assessment with A New Day on 15 October 2019 was to provide the assessor with truthful and accurate information and was to complete all recommendations of the Substance Abuse assessment. Father denied use of illegal substances and did not disclose that he submitted to a random hair follicle

test on 21 May 2019 that was positive for amphetamines, methamphetamines, and cocaine.

d. Father was recommended to complete sixteen (16) hours of a short term substance abuse program. Father completed twenty (20) hours of Substance Abuse Treatment on 10 December 2019. Father was also recommended to abstain from all illicit substances. Father was sent to Blue Ridge Community Health Services, Inc. and was seen by Barry Beavers for individual counseling and left in good standing in the fall of 2019, to be seen on an "as needed" basis.

e. Father contacted HCDSS on 21 July 2020 asking for a referral for another CCA. The social worker referred father to DC Wellness and Behavioral Health. Father did not go to DC Wellness and Behavioral Health and texted the social worker on 3 August 2020 to tell HCDSS he had obtained a SAA at October Road in Asheville. Father's new SAA has been delivered to HCDSS, and Father testified the S[A]A had no recommendations for needed services.

. . . .

g. Although there were numerous positive tests for illegal substances and the main metabolite for cocaine was found in father's results, father, in each substance abuse assessment, in the CCA, and in testimony at the TPR hearing, denied ever using illegal substances while providing no other evidence as to how such positive results were returned multiple times.

h. Father has completed the domestic violence intervention program at Safelight, a provider acceptable to HCDSS.

i. Father completed a parenting program with Safelight, a provider acceptable to HCDSS.

j. Father is paying Child Support through the Child Support Enforcement Agency in an amount consistent with

the guidelines. Father's last payment was 14 September 2020, and Father is in arrears One Hundred and Nineteen Dollars and eight cents ($119.08).

. . . .

l. Father has attended seventy eight (78) visits with the juvenile out of a possible eighty (80) visits. The two visits father missed were in 2018. Father was on time for his visits with the juvenile, and father's visits with the juvenile were never cut short. From 17 May 2019 to 14 February 2020, the Court had ordered father to have unsupervised visitation with the juvenile which went well until the unsupervised visitation ended on 15 October 2019 with father's positive hair follicle screen. A motion to address the change in visitation was not filed due to the next Permanency Planning and Review Hearing being already scheduled within thirty (30) days. Father never attended a single visit alone as the juvenile's grandmother . . . was always present at the visitations. [The grandmother] is part of father's support network, and her time with the juvenile was appropriate. However, father has never cared for or attempted to care for the juvenile on his own without the presence of a third party. Therefore, the father has not demonstrated the ability to provide appropriate care for the juvenile.

m. Father was employed at JB's Heating and Cooling, but father was laid off in September of 2019 and stated he started back working there three weeks later. On 17 December 2019, father stated he had been laid off from JB's Heating and Cooling and was looking for a job. Father was unemployed from 17 December 2019 to July of 2020. Father states he has now gone back to work at JB's Heating and Cooling and provided the social worker a check stub on 30 July 2020. Social Worker called and verified that Father is employed at JB's Heating and Cooling on 5 October 2020. Father testified at the TPR Hearing that he was employed but was waiting for a call to go to work. Therefore, father's employment has been sporadic over the time this case has

been in Court, and said employment has not been consistent. Father cannot say he is working full time as he is waiting for a call from JB's Heating and Cooling for him to come into work.

n. Father is residing with his Aunt, and the Aunt's home is safe and appropriate. . . .

. . . .

30. Father did not have a driver's license when the matter was filed but has since obtained a driver's license.

31. Mother and father are not currently in a relationship with each other.

32. The father told the assessor for the New Day CCA that father had never used illegal substances, and that CCA returned no recommendations for father. Father admitted to substance abuse use in the consent Adjudication Order and has multiple positive drug screens for Marijuana, Amphetamines, Methamphetamines, Cocaine, and benzoylecgonine, the main metabolite of cocaine, during the course of this case. The Court finds the CCA at New Day and the others where father denied use of illegal substances to be invalid as truthful and accurate information was not given to the assessor.

33. Father did not complete intensive out-patient substance abuse treatment which was ordered in the original CCA. Father's 16-hour classes does not qualify as intensive out-patient substance abuse treatment, and father has not completed this recommendation of the CCA.

. . . .

35. The adjudication order found father to have admitted to drug use as an issue leading to the juvenile being declared a neglected juvenile as defined under N.C.G.S. § 7B-101(15). The disposition order documents and found

that, with regard to the father, . . . there were issues of the use of alcohol and/or controlled or illegal substances and/or mental health issues by a parent and that part of the case plan father had to successfully complete to obtain return of the juvenile was to obtain a [CCA], provide truthful information to the assessor, submit to random drug screens, and follow all recommendations of the comprehensive clinical assessment-which included remaining free of illicit substances.

36. Father did not complete individual therapy, did not complete intensive out-patient substance abuse therapy, and denied any illicit drug use in court and to the assessor performing the CCA while testing positive for Amphetamines, Methamphetamines, Cocaine, and benzoylecgonine, the main metabolite of Cocaine.

37. Father has not addressed the issues of the use of alcohol and/or controlled or illegal substances and/or mental health issues by a parent as he has not shown substantial progress in a reasonable amount of time and has not completed, to the satisfaction of the court, the first three requirements of his case plan:

i. Father shall obtain a [CCA] from a certified provider acceptable to HCDSS and provide the assessor with truthful and accurate information;

ii. Father shall follow and successfully complete all the recommendations of the [CCA]; or

iii. Father shall submit to random drug screens.

The court also found that respondent tested positive for marijuana on 18 July and 23 October 2018; tested positive for amphetamines, methamphetamines, and cocaine on 21 May and 10 October 2019, and 1 September 2020; and tested positive for benzoylecgonine, the main metabolite of cocaine, on 10 October 2019 and 1 September

2020. Respondent also failed to submit to three urine drug screens requested by HCDSS and did not submit samples for three hair follicle screens that he had requested on 25 and 26 September and 2 October 2019. The trial court further documented the ten drug screens respondent completed during this period that showed a negative result.

¶ 20 Respondent first challenges the trial court's findings that he denied illegal substance use during his assessments and failed to provide truthful and accurate information to the assessors. Specifically, respondent challenges the portions of finding of fact 29(c) stating that he denied use of illegal substances during his substance abuse assessment with A New Day on 15 October 2019 and failed to disclose to New Day that he submitted to a random hair follicle test on 21 May 2019 that was positive for amphetamines, methamphetamines, and cocaine. Respondent also challenges the portions of findings of fact 29(g) and 36 stating that "in each substance abuse assessment, [and] in the CCA" respondent "denied ever using illegal substances" and denied any illicit drug use "to the assessor performing the CCA." Respondent argues the evidence and testimony about New Day's recommendation for basic substance abuse treatment contradicts the finding that he denied illegal substance use during the assessment. He also contends that there is no evidence he did not disclose the 21 May 2019 hair follicle test to New Day, or that he denied illegal substance use in the CCA and his assessments with New Day and October Road.

Respondent argues that although the social worker testified October Road did not know about a hair follicle test respondent took after completing the assessment, there is no testimony regarding anything respondent "said or did not say to the assessor *during* the assessment."

¶ 21        The social worker testified that respondent completed a substance abuse assessment with New Day on 15 October 2019, which recommended respondent complete sixteen hours of a short-term substance abuse program. She further testified that respondent completed the New Day twenty-hour substance abuse program on 10 December 2019. Respondent also testified that the New Day assessment recommended basic substance abuse treatment and that his assessment with October Road had no recommendations.

¶ 22        Because the undisputed evidence shows New Day recommended basic substance abuse treatment, it would be unreasonable to infer that respondent denied the use of illegal substances to New Day. *See In re N.P.*, 374 N.C. 61, 65 (2020) ("The [trial] court has the responsibility of making all reasonable inferences from the evidence presented."). Additionally, there is no evidence or testimony regarding respondent's disclosures to New Day or any other assessment, and thus no evidence that respondent failed to disclose the positive results of his 21 May 2019 hair follicle test during the New Day assessment, or that he denied using illegal substances during each substance abuse assessment and CCA.

¶ 23 HCDSS cites to the GAL report as support for the trial court's findings. However, the GAL report was admitted into evidence during the dispositional hearing "to support best interest[s]" after the trial court had already rendered its adjudicatory decision. As a result, the report cannot be used as competent evidence to support the trial court's adjudicatory findings. *See In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 28 ("[W]e have previously held that dispositional evidence cannot be used to support the trial court's adjudicatory determinations." (citing *In re Z.J.W.*, 2021-NCSC-13, ¶ 17)).[3] Thus, we must disregard the challenged portions of findings 29(c), (g), and 36. *See In re S.M.*, 375 N.C. 673, 691 (2020).

¶ 24 The second sentence of finding of fact 29(j) finds that respondent last made a child support payment on 14 September 2020 and that he was in arrears in the amount of $119.08. Respondent is correct that there was no testimony or other evidence in the record that respondent had any arrearage. The social worker testified that respondent "pays his child support" and that respondent "satisfied that part of his case plan on paying child support." HCDSS concedes that the only evidence in this case is that respondent paid his child support. Thus, the second sentence of this finding must be disregarded as unsupported by the evidence.

¶ 25 Respondent challenges the portion of finding of fact 29(l) stating that he has

---

[3] HCDSS's court report was not admitted into evidence at the hearing and is not included in the record on appeal.

"not demonstrated the ability to provide appropriate care" for Annie. Respondent asserts that the evidence shows he was appropriate during every visit with Annie and that no visits were cut short due to any problematic behavior. He contends that he demonstrated he could take care of Annie because the trial court allowed him unsupervised visits in May 2019.

The fact that respondent was approved for unsupervised visitation at a prior hearing did not preclude the trial court from later finding that he has not demonstrated the ability to provide appropriate care. Respondent's supervised visitation was suspended after he twice tested positive for amphetamines, methamphetamines, and cocaine, but there is no evidence in the record that he was ever in Annie's presence while under the influence of any drug. The social worker testified that respondent's visits went well and that he played with age-appropriate toys with Annie. The evidentiary support for the trial court's conclusion that respondent had not shown the ability to care for Annie is thin at best and falls short of the clear, cogent, and convincing evidence standard that we must apply.

Findings of fact 29(n) and 29(q) relate to whether respondent appropriately sought help with housing. Respondent correctly notes that there was no evidence in the record concerning respondent's contacts with Thrive, WCCA, or Hendersonville Housing Authority regarding housing assistance. HCDSS concedes this point and argues that it is in any event irrelevant because of the uncontradicted record

testimony from the social worker that the residence where respondent was currently living was appropriate for Annie. Therefore, we must disregard any implication that respondent failed to make reasonable efforts to find suitable housing for Annie. To the extent that it relates to whether the conditions that led to Annie's removal have been addressed, the record evidence indicates that respondent had obtained a safe and suitable living situation.

¶ 28        Respondent challenges the portion of finding of fact 32 stating that he told the assessor for the New Day CCA that he had never used illegal substances and the CCA returned no recommendations. The evidence and unchallenged findings show that respondent obtained CCAs from Family Preservation Services and October Road and obtained a substance abuse assessment through New Day. Both the social worker and respondent testified that the CCA from October Road had no substance abuse recommendations for respondent. Thus, we disregard this finding insomuch as it suggests the CCA without recommendations was obtained from New Day.

¶ 29        Respondent also challenges the portion of finding of fact 32 in which the court found that the CCAs where respondent denied use of illegal substances were invalid "as truthful and accurate information was not given to the assessor." Respondent argues the evidence does not support the finding that he did not give "truthful and accurate" information during any assessment. We agree. As stated previously, there is no adjudicatory evidence or testimony about respondent's disclosures during his

assessments. Although both the social worker and respondent testified that the October Road CCA did not have any recommendations, it does not necessarily follow that respondent did not provide truthful information to the assessor. As a result, we disregard this portion of finding of fact 32.

¶ 30        Respondent challenges the portion of finding of fact 33 stating that intensive outpatient substance abuse treatment was ordered in the original CCA, and that respondent failed to complete this recommendation. Respondent argues that there is conflicting evidence regarding the recommendations from the first CCA, and that "while there is some evidence, in the form of the social worker's testimony, that [respondent] was recommended to complete intensive outpatient at some point during this case, the clear and convincing evidence is that [respondent] was recommended to complete 'basic' substance abuse treatment."

¶ 31        The social worker testified that respondent completed a CCA through Family Preservation Services on 4 June 2019, and "another one" with October Road in August 2020 which "did not have any recommendations." During direct examination, the social worker testified that the 4 June 2019 CCA recommended "basic substance abuse treatment and individual therapy." However, during later questioning from the trial court, the social worker testified that respondent "originally was recommended to go through the intensive outpatient program[,]" but completed the New Day substance abuse classes instead, and that those classes were not equivalent to

intensive outpatient treatment. Based on this testimony, there is evidence respondent was "originally" recommended to go to intensive outpatient treatment and did not do so. Thus, we uphold that portion of the finding. However, the evidence does not show that the recommendation was necessarily from the CCAs respondent completed on 4 June 2019 or August 2020. As there is no other evidence of any additional CCA's completed by respondent, we disregard the finding to the extent that it indicates the recommendation for intensive outpatient therapy was from a CCA.

¶ 32 Respondent also challenges the part of finding of fact 36 stating that respondent "did not complete individual therapy[.]" Respondent asserts that this finding is contradicted by finding of fact 29(d), which found that respondent left individual counseling "in good standing in the fall of 2019, to be seen on an 'as needed' basis." We agree. The social worker acknowledged during cross-examination that the therapist's letter recommended respondent continue with individual therapy "as needed." Because the record reflects that respondent completed individual therapy "in good standing" and there was no evidence respondent required further "as needed" therapy, we disregard the portion of finding of fact 36 finding that respondent did not complete individual therapy.

¶ 33 Respondent next challenges finding of fact 37. He first takes exception to the portion of the finding stating that he did not address the issues of alcohol use or

mental health. Respondent argues there is no evidence that alcohol use was an issue for respondent. The social worker testified that the issues respondent needed to address before reunification could occur included "substance abuse and mental health of a parent." There is no testimony or evidence that respondent had any issues with alcohol during the case. Therefore, we disregard the portion of finding of fact 37 to the extent it suggests respondent had issues with alcohol use and failed to address those issues.

¶ 34    Respondent also challenges the portion of finding of fact 37 stating that he did not complete the first three requirements of his case plan. Respondent argues that the evidence establishes he completed a CCA with an acceptable provider and that the CCA recommended "basic substance abuse treatment and individual therapy." Respondent again argues there is no evidence to support a finding that he did not provide truthful information during his CCA. He further argues that he completed twenty hours of substance abuse treatment, left individual counseling in good standing, and failed to submit to only three of the eighteen requested drug screens.

¶ 35    The unchallenged findings show that respondent completed a CCA with Family Preservation Services on 4 June 2019, which recommended respondent complete substance abuse treatment and individual therapy and abstain from using illicit substances. However, respondent tested positive for amphetamines, methamphetamines, and cocaine on three occasions. Respondent also failed to submit

to three drug screens requested by HCDSS and to three hair follicle screens that he requested. The social worker testified that respondent initially was ordered to complete intensive outpatient substance abuse treatment and failed to do so. Thus, the evidence and other findings support the finding that respondent did not follow and successfully complete all of the recommendations from his CCA and failed to submit to all random drug screens. But, as stated previously, there is no evidence regarding what disclosures respondent may or may not have made to the assessors. Accordingly, we disregard the portion of the finding specifying that respondent did not complete the requirement that he provide the assessor with truthful and accurate information.

¶ 36    Respondent contends that there is no evidentiary support whatsoever in the record for the entirety of finding of fact 38, which finds that he failed to participate in most permanency planning action team (PPAT) meetings between 2018 and 2020. Respondent is correct that there was no testimony about PPAT meetings at any point during the hearing. Indeed, finding of fact 29 states that respondent "has maintained face to face visits with the social worker as may have been limited by the COVID-19 pandemic. As limited by the pandemic, father has maintained other contact, as requested and has attended court regularly." Additionally, the trial court made the following finding of fact in every permanency planning order: "[f]ather maintains face-to-face contact with the Social Worker as requested, including but not limited to

Child & Family Team Meetings and Permanency Planning Meetings." Neither HCDSS nor the Guardian ad litem makes any response to this contention. Respondent is correct that there is no factual basis for finding of fact 38 and it must be disregarded.

¶ 37    In sum, we uphold as supported by the evidence the findings that respondent failed to go to intensive outpatient treatment as ordered and failed to successfully complete all recommendations from his CCA. We disregard as unsupported by the evidence the court's findings that respondent denied use of illegal substances during his New Day assessment, failed to complete individual therapy, failed to provide "truthful and accurate" information to the assessors, failed to attend PPAT meetings, failed to demonstrate the ability to provide appropriate care for Annie, was in arrears in child support payments, and failed to seek assistance to find appropriate housing.

¶ 38    Having reviewed respondent's challenges to the trial court's relevant findings of fact, we next consider the trial court's adjudication of grounds for termination.

**B. Grounds for Termination**

¶ 39    Respondent argues the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(1) because the trial court's remaining findings of fact do not support its determination of a likelihood of repetition of neglect if Annie were placed in respondent's care. Respondent contends that the court's conclusions that grounds existed "are based almost entirely on a finding not

supported by any evidence: that [respondent] gave untruthful information in the CCA and in the substance use assessments." We agree.

¶ 40    "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870 (2020) (quoting *In re M.J.S.M.*, 257 N.C. App. 633, 637 (2018)). At the same time, "a parent's compliance with his or her case plan does not preclude a finding of neglect." *In re J.J.H.*, 376 N.C. 161, 185 (2020) (citing *In re D.W.P.*, 373 N.C. 327, 339–40 (2020) (noting the respondent's progress in satisfying the requirements of her case plan while upholding the trial court's determination of a likelihood of future neglect because the respondent had failed "to recognize and break patterns of abuse that put her children at risk")); *see also In re Y.Y.E.T.*, 205 N.C. App. 120, 131 (explaining that a "case plan is not just a check list" and that "parents must demonstrate acknowledgment and understanding of why the juvenile entered DSS custody as well as changed behaviors"), *disc. review denied*, 364 N.C. 434 (2010). In this case, however, respondent actually complied with almost all of the requirements of his case plan. At the time Annie was removed from respondent's custody, he had not yet established paternity and the consent adjudication of neglect identified the mother's drug use, not his, as the condition needing remediation. By the time the termination petition was filed, respondent had visited with Annie on 78 occasions, was paying child support, had a home she could live in, had completed substance abuse, domestic

violence, and parenting programs, and had addressed the conditions that led to Annie's placement in HCDSS's custody.

To be sure, respondent's substance abuse was recognized as a concern from the initiation of the case, and he was required to address it as part of his case plan. Respondent completed twenty hours of basic substance abuse treatment (four hours more than required by the assessment), but he also continued to test positive for amphetamines, methamphetamines, and cocaine on occasion after completing that treatment, and he denied using methamphetamine or any other drug at the termination hearing despite those positive test results. Respondent's denial of drug use despite the positive drug screens is some support for the trial court's finding that he failed to completely address his substance abuse issues. But given the trial court's other findings of fact that are supported by the evidence, this says very little about his ability to parent his daughter. There are no findings to support the conclusion that respondent's drug use will result in "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . ." *In re Stumbo*, 357 N.C. 279, 283 (2003); *cf. In re K.B.*, 378 N.C. 601, 2021-NCSC-108, ¶ 22 (affirming termination order on ground of neglect where "the trial court made express findings that [the juveniles] were impaired or at a substantial risk of impairment as a result of respondent mother's neglect"). Thus, disregarding the trial court's findings that were not supported by evidence in the record, the trial court's conclusion that

Annie would likely be neglected if returned to her father's care is not supported by the remaining findings of fact. As a result, the trial court's order adjudicating neglect as a ground for termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) must be vacated.

Similarly, given the remaining findings of fact, we cannot conclude that a ground exists for termination under N.C.G.S. § 7B-1111(a)(2). The remaining findings indicate some positive drug screens but also reflect respondent's completion of most of the other requirements of respondent's case plan, including having employment and suitable housing; paying child support; attending almost all visitations; and completing substance abuse, domestic violence, and parenting programs. On these undisturbed findings, we cannot conclude that respondent failed to make reasonable progress towards correcting the conditions that led to Annie's removal. *Cf. In re J.M*, 373 N.C. 352, 356 (2020) (affirming order terminating parental rights where "[t]he record is clear that at the time of the termination hearing . . . [respondent-mother] had failed to comply with the services outlined for her to complete").

Therefore, we hold that the trial court's findings of fact are insufficient to support its determination that respondent's parental rights in Annie were subject to termination on the grounds of neglect and failure to make reasonable progress in

correcting the conditions that led to her removal from his custody.[4] We vacate the trial court's termination order and remand this case to the District Court, Henderson County for further proceedings consistent with this opinion. In its discretion, the trial court may receive additional evidence on remand. *See In re T.M.H.*, 186 N.C. App. 451, 456 (2007).

VACATED AND REMANDED.

---

[4] As a prudential matter, a remand under these circumstances is appropriate because adjudicating the asserted grounds requires making various fact-intensive subjective judgments, such as whether respondent exhibited "reasonable progress under the circumstances" and whether there existed a "substantial probability of the repetition of such neglect." Because we cannot say with certainty whether the erroneous factual findings were central or incidental to the trial court's ultimate resolution of these questions, a remand ensures that these questions are answered by the trial court, the tribunal tasked with "assign[ing] weight to particular evidence and . . . draw[ing] reasonable inferences therefrom." *In re K.L.T.*, 374 N.C. 826, 843 (2020).