IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-497

Filed 19 February 2025

Lenoir County, No. 19JT000096

IN THE MATTER OF: K.J.P.W.

Appeal by respondent-mother from judgment entered 5 March 2024 by Judge Curtis Stackhouse in Lenoir County District Court. Heard in the Court of Appeals 15 January 2025.

> *White & Allen, P.A., by Delaina Davis Boyd and Christopher J. Waivers, for the petitioners-appellees.*
>
> *Edward Eldred, for the respondent-appellant mother.*

FLOOD, Judge.

Respondent-Mother appeals from the trial court's order terminating her parental rights. On appeal, Respondent-Mother argues the trial court could not terminate her parental rights under N.C.G.S. § 7B-1111(a)(7) for any "willful" action where it granted a Rule 17 guardian for her, and thus, she was incompetent to do anything "willfully." Respondent-Mother additionally argues the trial court could not terminate her parental rights under N.C.G.S. § 7B-1111(a)(3) for failing to pay for the care of the minor child where the minor child was not in foster care but was living with legal guardians. Upon review, we conclude the trial court properly found

- 1 -

Respondent-Mother acted "willfully," supporting grounds to terminate her parental rights under N.C.G.S. § 7B-1111(a)(7), despite having a Rule 17 guardian appointment, and we do not reach her additional argument.

## I. **Factual and Procedural Background**

Respondent-Mother is the biological mother of the minor child, Koda.[1] On 30 August 2019, the Lenoir County Department of Social Services ("DSS") petitioned for non-secure custody of Koda when he was ten days old, after Koda's maternal grandmother reported to DSS the conditions of Respondent-Mother's home, identifying the conditions as being extremely cluttered, lacking in any baby formula supplies, and having cockroaches crawling around. Koda was placed in the care of Petitioners that same day.

Additionally, on that same day, Petitioners filed a petition of neglect, and Koda was adjudicated to be a neglected juvenile. Respondent-Mother was granted visitation and ordered to follow DSS' recommendations, including having a mental health assessment done, taking parental responsibility classes, participating in anger management classes, and obtaining and maintaining stable housing.[2] The case was removed from the active docket on 15 June 2021, after guardianship was awarded to Petitioners, and reunification was eliminated as part of the case plan.

---

[1] The parties stipulated to use a pseudonym for the minor child to protect his identity, pursuant to N.C.R. App. P. 42.

[2] Although the Record before us does not include a copy of the order, Respondent-Mother testified she was ordered to take several types of classes after DSS determined her house was "nasty."

On 18 April 2023, Petitioners filed a petition to terminate Respondent-Mother's parental rights in Koda. Petitioners alleged, in relevant part, that Respondent-Mother has: "had no contact with the minor child since August 2022"; "[w]illfully failed, without justification, to pay for the care, and support of the minor child since the birth of the minor child for a period of more than one year"; and "[f]ailed to have consistent contact with the minor child, also constituting abandonment[,]" despite the fact "[t]hat at all relevant times, Respondent[-]Mother has had the ability to maintain communication with the minor child and to pay child support."

On 23 June 2023, Respondent-Mother's counsel filed a motion to appoint a Rule 17 guardian to assist Respondent-Mother in the proceedings, and the trial court granted the motion without further inquiry. Respondent-Mother thereafter appealed to this Court based on the trial court's lack of additional inquiry when granting her a Rule 17 guardian, and in an unpublished opinion, this Court held the trial court did not abuse its discretion when it did not conduct an additional inquiry into Respondent-Mother's competency. *See In re K.W.*, 282 N.C. App. 734 (2022) (unpublished) (hereinafter "*In re K.W.*"). On 5 March 2024, the trial court held a termination of parental rights hearing, and that same day, entered an order terminating Respondent-Mother's parental rights. The trial court found that Respondent-Mother: "had one visit [with Koda] during a 14-month period"; was not "incompetent[,] neither suffers any legal disability"; worked "at Bojangles at various

times"; failed to maintain communication with Koda even though Respondent-Mother had "the ability to"; "increased the frequency of her visits [with Koda]" after Petitioners filed their petition to terminate her parental rights; and "failed to provide any gifts, cards, or anything for [Koda,] even for holidays and birthdays." Additionally, the trial court noted that Respondent-Mother claimed in an email written on 15 June 2022 to Petitioners that she could not visit Koda because her other child was sick in the hospital, but ultimately found that "even after Respondent-Mother's other child was no longer in the hospital, Respondent-Mother failed to consistently visit with [Koda]."

The trial court concluded that Respondent-Mother willfully abandoned Koda under N.C.G.S. § 7B-1111(a)(7) "for at least six consecutive months immediately preceding the filing" of Petitioner's petition to terminate Respondent-Mother's parental rights, and that Respondent-Mother "willfully failed, without justification, to pay for the care, and support of [Koda] since the birth of [Koda] for a period of more than one year and such lack of support constitutes abandonment" under N.C.G.S. § 7B-1111(a)(3). The trial court entered its order terminating Respondent-Mother's parental rights, and Respondent-Mother timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction over an appeal by a non-prevailing parent from an order terminating her parental rights, pursuant to N.C.G.S. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2023).

### III. <u>Standard of Review</u>

This Court reviews a termination of parental rights to determine "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re M.J.S.M.*, 257 N.C. App. 633, 636 (2018) (citation omitted). This Court reviews de novo a trial court's conclusions of law. *See In re K.J.M.*, 288 N.C. App. 332, 339 (2023). "Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* at 339 (citation omitted) (cleaned up). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." *In re M.J.S.M.*, 257 N.C. App. at 636 (citation omitted).

### IV. <u>Analysis</u>

On appeal, Respondent-Mother argues the trial court could not terminate her parental rights for any "willful" action where the trial court granted a Rule 17 guardian for her, and thus she was incompetent to do anything "willfully." Respondent-Mother additionally argues the trial court could not terminate her parental rights under N.C.G.S. § 7B-1111(a)(3) (2023) for failing to pay for the care of Koda because Koda was not in foster care, as is required by the statutory language in mandating payment for the care of a child, but rather was staying with legal guardians. Because we conclude the trial court correctly terminated Respondent-

Mother's parental rights for willful abandonment under N.C.G.S. § 7B-1111(a)(7), we do not reach Respondent-Mother's second argument.

A trial court may terminate parental rights under N.C.G.S. § 7B-1111(a)(7) if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition [to terminate parental rights.]" N.C.G.S. § 7B-1111(a)(7). "In the context of abandonment, willfulness is more than an intention to do a thing; there must also be purpose and deliberation." *In re D.M.O.,* 250 N.C. App. 570, 572–73 (2016) (citation omitted) (cleaned up).

An appointment of a Rule 17 guardian is not based on a person's legal incompetence. *See In re Q.B.*, 375 N.C. 826, 836 (2020). Our Supreme Court has explained that "neither mental health limitations nor a low IQ constitute per se evidence of a lack of competency for purposes of Rule 17[,]" but rather, a Rule 17 guardian is to be appointed only after determining "whether the parent is able to comprehend the nature of the proceedings and aid her attorney in the presentation of her case." *Id.* at 836. The Court contrasted a Rule 17 guardian from that of a Chapter 35A guardian:

> Adjudications of adult incompetency are governed by Chapter 35A[.] An adult guardian appointed under Chapter 35A generally has a broad range of powers with respect to the ward's person and property . . . whereas the duties of a [guardian] under Rule 17 appointed solely for purposes of assisting a parent during a particular juvenile proceeding are much more limited.

*Id.* at 836.

IN RE: K.J.P.W.

*Opinion of the Court*

As to the Rule 17 appointment, Respondent-Mother argues that "the trial court's finding that [Respondent-Mother] was *not* incompetent and did *not* suffer any legal disability is plainly unsupported by the evidence" because "[t]he trial court *necessarily* found [Respondent-Mother] was incompetent—that is, she lacked sufficient capacity to manage her own affairs and to communicate important decisions concerning her family—because the trial court may only appoint a Rule 17 guardian if the parent is 'incompetent.'" This argument is without merit, as a Rule 17 guardian appointment does not establish that Respondent-Mother is legally incompetent, as explained above. *See id.* at 836.

Respondent-Mother does not challenge any of the trial court's findings of fact that support willful abandonment, and thus, these findings are binding on appeal. *See In re M.J.S.M.*, 257 N.C. App. at 636. The trial court found, in relevant part, that Respondent-Mother failed to maintain communication with Koda even though she "had the ability to[,]" and that Respondent-Mother "had one visit [with Koda] during a 14-month period[,]" including a finding that Respondent-Mother "had no visits with [Koda] in September 2022, October 2022, November 2022, December 2022, January 2023, February 2023, March 2023, [and] April 2023[.]" These facts, deemed binding on appeal, *see id.* at 636, in turn support the trial court's conclusion of law that Respondent-Mother willfully abandoned Koda "for at least six consecutive months immediately preceding the filing" of Petitioner's petition, pursuant to N.C.G.S. § 7B-1111(a)(7). *See* N.C.G.S. § 7B-1111(a)(7); *see also In re M.J.S.M.*, 257 N.C. App. at

636. Thus, under our de novo review, the trial court properly terminated Respondent-Mother's parental rights under N.C.G.S. § 7B-1111(a)(7). *See In re K.J.M.*, 288 N.C. App. at 339.

We distinguish this case from *In re A.L.L.* 376 N.C. 99 (2020). In *In re A.L.L.*, the respondent's parental rights were terminated after the trial court found she willfully abandoned her child. *See id.* at 110. During the determinative six-month window required for abandonment, the respondent suffered "from delusions and struggles with reality, persisted in her refusal to take prescribed medications, and became easily agitated, delusional, and incoherent during a visit with [the minor child.]" *Id.* at 110 (internal quotation marks omitted). On appeal, our Supreme Court reversed the trial court's termination of the respondent's parental rights, explaining: "the evidence show[ed] that [the] respondent's deficient conduct as a parent was largely, if not entirely, a manifestation of her severe mental illnesses[,]" and therefore, the respondent did not act *willfully* in abandoning her child. *Id.* at 111. This was the only evidence the trial court found regarding the respondent's willful intent to abandon her child. *See id.* at 111-12. The Court held: "at a minimum, a trial court presented with evidence indicating that a mentally ill parent has willfully abandoned his or her child must make specific findings of fact to support a conclusion that such behavior illustrated the parent's willful intent rather than symptoms of a parent's diagnosed mental illness." *Id.* at 111-12. In making this holding, the Court reasoned:

> [J]ust as incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision, . . . behavior emanating from a parent's mental health conditions may supply grounds for terminating parental rights only upon an analysis of the relevant facts and circumstances, such as the severity of the parent's condition and the extent to which the parent's behavior is consistent with recognizable symptoms of an illness.

*Id.* at 112 (citation omitted) (cleaned up).

Unlike the respondent in *In re A.L.L.* who could not be found to have willfully abandoned her child without specific findings as to willful intent, due to the evidence showing only "that [the] respondent's deficient conduct as a parent was largely, if not entirely, a manifestation of her severe mental illnesses[,]" *see id.* at 111, the trial court here was not required to make any specific findings as to Respondent-Mother's deficient conduct, as her conduct was not evidenced nor argued to be a manifestation of any severe mental illness.

During the hearing on termination of Respondent-Mother's parental rights, Respondent-Mother's counsel stated twice that the only mental health report in the record was "not relevant" to the hearing:[3]

> MS. DURANT: Objection as to any reference to [the mental health] report. That's been like three or four years. It's not relevant.
>
> . . . .

---

[3] The Record before us does not contain a copy of Respondent-Mother's mental health assessment report.

> MS. DURANT: It is not relevant to this trial, to this termination of parental rights. I think her report was admitted in abuse and neglect, but we have different parties. We now have a Guardian Ad Litem. That report was done like in 2020. It's old. It pre-dates the conclusion of the abuse and neglect case, so I'm strenuously objecting to anything regarding [her mental health report].

The trial court overruled the objection, clarifying that Petitioners' counsel was not seeking to discuss anything of *substance* in the mental health report, but was instead asking Respondent-Mother what she was ordered to do for reunification after the trial court adjudicated Koda neglected, which included being given a mental health assessment, among other things, such as taking parenting classes and maintaining stable housing. There was no discussion in the hearing regarding any content of Respondent-Mother's mental health report.

Respondent-Mother testified that, along with her income from working at Bojangles, she was receiving Supplemental Security Income ("SSI") because she had "some issues[,]" but when asked what issues, she responded: "[I] don't know." Respondent-Mother's mother testified that she was Respondent-Mother's payee for SSI because Respondent-Mother was "delayed," but that she gave Respondent-Mother the funds because "[Respondent-Mother] does what she needs to do with it." Respondent-Mother's mother also testified as to the changes she had seen in Respondent-Mother in the past four years:

> Q. Describe to the [c]ourt, in detail, what changes you have seen.

A. She's been keeping her house up like she's supposed to. She's been going to her appointments like she's supposed to. She's found her a job. Go to work.

Additionally, the following conversation took place between Respondent-Mother and Petitioner's counsel, with Respondent-Mother agreeing she did not visit Koda for seven months:

Q. So, can you explain to the Court why you missed the seven months of visits at the end of 2022 to 2023?

A. Don't remember.

Q. Do you agree you did?

A. Yes.

Respondent-Mother later explained that she did not reach out for visitation with Koda for seven months due to Facebook and phone problems:

Q. Okay. And so after that e-mail in August 2022, you didn't reach out again; correct, until April of 2023? Is that right?

A. That's correct.

Q. So, why is that?

A. Well one, my Facebook got hacked. That's why I couldn't reach out. The other one, I have phone problems.

Q. Do you think that's a good reason not to see your child for seven months 'cause your Facebook got hacked or you had phone problems?

A. I mean, I was going to reach out.

Her mother also testified regarding Respondent-Mother missing visitation with Koda during a previous five-month period, prior to the seven-month period described above, stating that Respondent-Mother takes care of her other "two year old" child, who during that five-month period was "back and forth in the hospital."

In their petition to terminate Respondent-Mother's parental rights, Petitioners made no reference to any mental illness or concerns for Respondent-Mother, but merely alleged she failed to visit or pay support to Koda. Further, as discussed above, a Rule 17 guardian appointment does not invoke evidence of mental health illness, *see In re Q.B.*, 375 N.C. at 836, and this Court previously held the trial court did not err in granting the motion to appoint a Rule 17 guardian without holding a further inquiry for Respondent-Mother. *See In re K.W.* at 739.

Accordingly, the trial court was not required to make specific findings of fact as to Respondent-Mother's deficient conduct being due to any severe mental illness, as her conduct was not argued nor evidenced to be a manifestation of any severe mental illness. Moreover, Respondent-Mother admitted her failure to reach out for visitation was due to experiencing Facebook and phone problems for seven months.

Because a trial court may terminate parental rights as long as one ground is met under N.C.G.S. § 7B-1111(a), and we conclude under our de novo review that the trial court properly determined that Respondent-Mother willfully abandoned Koda under N.C.G.S. § 7B-1111(a)(7), we need not address Respondent-Mother's additional argument. *See In re P.L.P.*, 173 N.C. App. 1, 8 (2005) (determining that "where the

trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds" (citation and internal quotation marks omitted)). Accordingly, we affirm the trial court's termination of Respondent-Mother's parental rights under N.C.G.S. § 7B-1111(a)(7).

## V. **Conclusion**

Upon review, we conclude the trial court properly found Respondent-Mother acted willfully, notwithstanding her Rule 17 guardian appointment, and thus the trial court properly terminated Respondent-Mother's parental rights under N.C.G.S. § 7B-1111(a)(7). Because we hold the trial court met one ground for termination under N.C.G.S. § 7B-1111(a), we do not address Respondent-Mother's additional argument.

AFFIRMED.

Judge WOOD concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge, dissenting.

The trial court's findings of fact are not supported by clear, cogent, and convincing evidence, These unsupported findings do not support the trial court's conclusion to terminate Respondent's parental rights based upon willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) (2023) or willful failure to pay a reasonable portion of the cost of childcare under § 7B-1111(a)(3) (2023). The trial court erred when it terminated Respondent's parental rights without supported findings and conclusions. I respectfully dissent.

## I.    Standard of Review

This Court reviews a trial court's order terminating parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citation omitted). The trial court's conclusions of law are reviewed *de novo*. *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (citation omitted).

Petitioner bears the burden of proving "by clear, cogent, and convincing evidence the existence of one or more grounds for termination under [N.C. Gen. Stat. § 7B-1111(a)]" at the adjudicatory stage. *In re J.A.E.W.*, 375 N.C. 112, 116, 846 S.E.2d 268, 271 (2020) (citation omitted). Petitioner failed to carry or meet its burden under

the statute and our case law. *Id.*

## II. Termination for Willful Failure to Pay a Reasonable Portion of the Cost of Childcare and Willful Abandonment

### A. Willful Abandonment

The district court and the majority's opinion wrongfully terminate Petitioner's parental rights for willful abandonment.

Our statutes provide a trial court may terminate parental rights upon a supported finding and conclusion "[t]he parent has *willfully abandoned* the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7) (emphasis supplied). Our Supreme Court held: "abandonment requires a purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to the child." *In re L.M.M.*, 375 N.C. 346, 349, 847 S.E.2d 770, 773 (2020) (citation and quotation marks omitted). "The word 'willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). Petitioners carry and maintain the burden of proving Respondent had "acted willfully in abandoning [her] child." *In re L.M.N.*, 375 N.C. 346, 353, 847 S.E.2d 770, 776 (2020).

"To find that a parent has willfully abandoned his or her child, the trial court must find evidence that the parent deliberately eschewed his or her parental responsibilities in their entirety." *In re A.L.L.*, 376 N.C. 99, 110, 852 S.E.2d 1, 9

(2020) (citation and quotation marks omitted). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the determinative period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re B.R.L.*, 379 N.C. 15, 18, 863 S.E.2d 7673, 767 (2021); *See* N.C. Gen. Stat. § 7B-1111(a)(7).

### B. Willful Failure to Provide Material Support

The statutes also provide a district court may terminate parental rights where "[t]he juvenile has been placed in the custody of a county department of social services . . . , and the parent for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C. Gen. Stat. § 7B-1111(a)(3). To support this ground, a district court is required to make a supported finding the "parent has [the] ability to pay support[.]" *In re Ballard*, 311 N.C. 708, 716-17, 319 S.E.2d 227, 233 (1984). "Although what is within a parent's ability to pay or what is within the means of a parent to pay is a difficult standard which requires great flexibility in its application, the requirement of N.C. Gen. Stat. § 7B-1111(a)(3) applies irrespective of the parent's wealth or poverty." *In re T.D.P.*, 164 N.C. App. 287, 290, 595 S.E.2d 735, 738 (2004) (citation and quotation marks omitted).

### C. *In re A.L.L.*

Our Supreme Court examined a parent's mental health conditions in *In re A.L.L.*, 376 N.C. at 101-02, 852 S.E.2d at 4, wherein a parent's medical records showed she "had previously been diagnosed with schizophrenia, obsessive compulsive disorder, bipolar disorder, and an eating disorder, a doctor from the hospital conducted a mental health assessment and confirmed a primary diagnosis of schizophrenia."

### 1. *Willful Abandonment*

Respondent's parental rights were terminated for willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). The Supreme Court held: "Evidence that respondent acted in a manner consistent with the symptoms of her severe mental illness is not, standing alone, evidence that she willfully intended to abandon her child." *Id.* at 111, 852 S.E.2d at 10. Our Supreme Court further held: "Thus, at a minimum, a trial court presented with evidence tending to show that a mentally ill parent has willfully abandoned his or her child must make specific findings of fact to support a conclusion that such behavior illustrated the parent's willful intent rather than symptoms of a parent's diagnosed mental illness." *Id.* at 111-12, 852 S.E.2d at 10.

Respondent was diagnosed with a moderate intellectual disability, mild persistent depressive disorder, and low intellectual functioning and adaptive skills. The district court failed to make any findings as is required by *In re A.L.L.* The district court only found: "That neither Petitioners nor Respondent Father nor Respondent Mother is an infant or incompetent and neither suffers any legal

- 17 -

disability." While Respondent has not been adjudicated as incompetent, she has been diagnosed with mental illness. The evidence and record do not show, and the district court failed to make, specific findings of fact to support a conclusion such behaviors proved Respondent's willful intent, rather than symptoms of a parent's diagnosed mental illness. *Id.*

### 2. Failure to Provide Support

In the case of *In re A.L.L.*, the Court addressed abandonment, but also contains other specific language, which is applicable here and has been applied to other putative grounds. *See In re E.G.R.*, 288 N.C. App. 191, 844 S.E.2d 181 (2023) (unpublished). While this Court's opinion in *In re E.G.R.* is unpublished, the opinion persuasively addresses the issue of a parent's mental illness in a termination proceeding asserting her willful failure to make reasonable progress. The opinion in *In re A.L.L.* provides:

> [J]ust as incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision, behavior emanating from a parent's mental health conditions may supply grounds for terminating parental rights *only upon an analysis* of the relevant facts and circumstances, *such as the severity of the parent's condition and the extent to which the parent's behavior is consistent with recognizable symptoms of an illness.*

*In re A.L.L.*, 376 N.C. at 112, 852 S.E.2d at 10-11 (citations and quotation marks omitted) (emphasis supplied). These required findings were not made. Contrary to Respondent's assertions, her alleged mental illness and incompetence is not an

outright bar on termination under either ground found below. However, despite the majority's purported distinction, the appointment of a Rule 17 guardian for Respondent does not invoke evidence of her mental illness or establish willfulness. The district court failed to make required fundings and must comply with *In re A.L.L. Id.*

In their petition to terminate Respondent's parental rights, Petitioner made no reference to any mental illness or concerns for Respondent, despite her own counsel previously requesting an evaluation after Respondent was diagnosed with a moderate intellectual disability, mild persistent depressive disorder, and low intellectual functioning and adaptive skills. *Id.*

## D. Disposition

Our Supreme Court set forth the procedure to be used "when an appellate court determines that the trial court's findings of fact are insufficient" and held:

> the court must examine whether there is sufficient evidence in the record that could support the necessary findings. If so, the appropriate disposition is to vacate the trial court's order and remand for entry of a new order. This permits the trial court, as finder of fact, to decide whether to enter a new order with sufficient findings based on the record or to change its conclusions of law because the court cannot make the necessary findings.

*In re A.J.*, 386 N.C. 409, 417, 904 S.E.2d 707, 715 (2024) (internal citations omitted). The trial court's order terminating parental rights is properly vacated and remanded for further findings on Respondent's capacity and competence for willful conduct and

for further proceedings. *Id.*

### III.  Conclusion

The trial court's unsupported findings and conclusions terminating Respondent's parental rights for willful failure to provide material support and for willful abandonment are unsupported and affected by errors on essential elements. The order is properly vacated and remanded for further evidence, findings and proceedings. *Id.* I respectfully dissent.