HUNTER, JR., Robert N., Judge.
 

 *634
 
 Respondent-Parents appeal from an order terminating their parental rights to their minor child, M.J.S.M. ("Mary").
 
 [1]
 
 On appeal, Respondent-Mother argues the trial court erred in terminating her parental rights on the grounds of neglect, willful failure to pay a reasonable portion of the cost of Mary's care, and dependency. Respondent-Father's counsel filed a no-merit brief, pursuant to North Carolina Rule of Appellate Procedure 3.1(d). N.C.R. App. P. 3.1(d) (2017). We affirm.
 

 I. Factual and Procedural Background
 

 On 13 April 2016, petitioner Guilford County Department of Health and Human Services ("DHHS") filed a juvenile petition alleging five-month-old Mary to be a neglected and dependent juvenile. The petition alleged DHHS received a Child Protective Services ("CPS") report after Respondent-Father choked, hit, and pushed on the stomach of Respondent-Mother, while she was pregnant with Mary. As a result of Respondent-Father's actions: (1) doctors performed an emergency caesarian section due to fetal distress; (2) Mary had no heartbeat; and (3) doctors had to resuscitate Mary for twenty minutes, immediately after she was born.
 

 In late 2015 and early 2016, Respondent-Parents entered into case plans and agreed Respondent-Father would not have any contact with Respondent-Mother or Mary. On 13 April 2016, a DHHS social worker made an unannounced visit to Respondent-Mother's
 
 *372
 
 home and discovered Respondent-Father there. Additionally, Respondent-Mother "failed to comply with the terms of her treatment plan, including her failure to enroll in and attend domestic violence education[.]" Respondent-Father "refused to complete substance abuse counselor or drug screens and has avoided contact with [the social worker]."
 

 Consequently, DHHS filed the petition and requested nonsecure custody of Mary "[d]ue to the ongoing substance abuse and domestic violence and the lack of family resources to provide care and supervision." On 13 April 2016, the court granted nonsecure custody of Mary to DHHS.
 

 On 6 May 2016, Respondent-Mother entered into an out-of-home services agreement with DHHS, replacing her prior case plan. Respondent-Mother agreed to,
 
 inter alia
 
 : (1) submit to a psychiatric assessment and
 
 *635
 
 comply with any recommendations thereof; (2) complete domestic violence programs and "not have any contact with [Respondent-Father]"; (3) maintain safe, stable housing; (4) maintain stable employment; (5) submit to a substance abuse assessment; and (6) attend other DHHS programs/courses.
 

 On 15 September 2016, the court held a pre-adjudication, adjudication, and dispositional hearing. In an order entered 25 October 2016, the court adjudicated Mary as a neglected and dependent juvenile.
 
 [2]
 
 Respondent-Mother failed to submit to a psychiatric assessment, maintained contact with Respondent-Father, lived in the same apartment complex as Respondent-Father, failed to attend multiple appointments or did not engage in therapy sessions, failed to maintain employment, and used drugs. Respondent-Father failed to submit to a parenting/psychological assessment, failed to enroll in domestic violence classes, maintained contact with Respondent-Mother, and tested positive for marijuana in a drug screen.
 

 The court ordered Respondent-Parents to comply with their case plans and permitted Respondent-Mother to have supervised visitation with Mary, who remained in DHHS custody, twice per week. The court did not permit Respondent-Father to have any contact with Mary. The court set the primary permanent plan as reunification.
 

 On 20 December 2016, the trial court entered a permanency planning review order.
 
 [3]
 
 The court found Respondent-Parents showed a "lack of compliance" with their case plans. The court changed the primary permanent plan to adoption, with a secondary plan of reunification. The court ordered DHHS to file a termination of parental rights petition within sixty days. The court also reduced Respondent-Mother's visitation to once per week.
 

 On 27 January 2017, DHHS filed a motion seeking to terminate Respondent-Parents' parental rights to Mary on the grounds of neglect, willful failure to pay a reasonable portion of the cost of Mary's care, and dependency.
 
 See
 
 N.C. Gen. Stat. § 7B-1111(a)(1), (3), (6) (2015). The court held a hearing for the motion on 20 March 2017.
 

 On 18 April 2017, the trial court entered an order terminating Respondent-Mother's parental rights based upon all three grounds alleged
 
 *636
 
 by DHHS and Respondent-Father's parental rights based upon neglect and willful failure to pay a reasonable portion of the cost of Mary's care. Respondent-Parents entered timely notices of appeal.
 

 II. Standard of Review
 

 "The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law."
 
 In re Clark
 
 ,
 
 72 N.C. App. 118
 
 , 124,
 
 323 S.E.2d 754
 
 , 758 (1984) (citation omitted). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court."
 
 In re A.R.H.B.
 
 ,
 
 186 N.C. App. 211
 
 , 214,
 
 651 S.E.2d 247
 
 , 251 (2007) (internal quotation marks and citations omitted),
 
 appeal dismissed
 
 ,
 
 362 N.C. 235
 
 ,
 
 659 S.E.2d 433
 
 (2008).
 

 *373
 

 III. Analysis
 

 A. Respondent-Mother's Appeal
 

 Respondent-Mother argues the trial court erred by concluding three grounds existed to terminate her parental rights. We disagree.
 

 Pursuant to N.C. Gen Stat. § 7B-1111(a)(1), "[t]he trial court may terminate the parental rights to a child upon a finding that the parent has neglected the child."
 
 In re Humphrey
 
 ,
 
 156 N.C. App. 533
 
 , 540,
 
 577 S.E.2d 421
 
 , 427 (2003) (citing N.C. Gen. Stat. § 7B-1111(a)(1) ). A neglected juvenile is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned[.]" N.C. Gen. Stat. § 7B-101(15) (2015).
 

 "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding."
 
 In re Young
 
 ,
 
 346 N.C. 244
 
 , 248,
 
 485 S.E.2d 612
 
 , 615 (1997 (citation omitted). However, when, as here, the child has been removed from her parent's custody such that it would be impossible to show the child is currently being neglected by their parent, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect."
 
 In re Ballard
 
 ,
 
 311 N.C. 708
 
 , 713-14,
 
 319 S.E.2d 227
 
 , 231 (1984).
 

 If a prior adjudication of neglect is considered, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect."
 
 Id
 
 . at 715,
 
 319 S.E.2d at 232
 
 (citation omitted). Thus, where:
 

 *637
 
 there is no evidence of neglect at the time of the termination proceeding ... parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
 

 In re Reyes
 
 ,
 
 136 N.C. App. 812
 
 , 815,
 
 526 S.E.2d 499
 
 , 501 (2000) (citation omitted). A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect.
 
 In re D.M.W.
 
 ,
 
 173 N.C. App. 679
 
 , 688-89,
 
 619 S.E.2d 910
 
 , 917 (2005),
 
 rev'd per curiam per the dissent,
 

 360 N.C. 583
 
 ,
 
 635 S.E.2d 50
 
 (2006).
 

 In this case, Respondent-Mother concedes Mary was previously adjudicated a neglected juvenile. However, she disputes the evidence at the termination hearing demonstrated a likelihood of future neglect. The trial court made the following finding, with respect to repetition of neglect:
 

 17.... c. There is a likelihood of the repetition of neglect by [Respondent-Mother], given her history of neglect, her failure to adequately address the issues that resulted in the removal of the juvenile (particularly her mental health), the fact that she continues to minimize the impact of the domestic violence between herself and the father, the fact that she was not truthful about contact between herself and the father since removal of the juvenile, and the fact that she is currently inconsistent with mental health medications and therapy.
 

 Respondent-Mother contends this finding is not supported by competent evidence because she made some progress on various aspects of her case plan. Specifically, she argues there was evidence she: (1) obtained appropriate housing, (2) engaged in some domestic violence counseling, and (3) was taking her prescribed medication for her mental health disorders. While Respondent-Mother is correct she did not completely fail to work on her case plan, the evidence presented at the termination hearing shows this work was only sporadic and inadequate.
 

 In its termination order, the trial court made specific findings regarding Respondent-Mother's progress on her case plan. These findings reflected,
 
 inter alia
 
 , Respondent-Mother: (1) submitted to two psychiatric evaluations, but failed to comply with their recommendations; (2) did not begin taking medication for her mental health issues until March 2017; (3) completed only five of twelve sessions in a domestic violence program; (4) continued to be seen with Respondent-Father and
 
 *638
 
 downplayed his domestic abuse; (5) failed to find housing in a separate apartment
 
 *374
 
 complex from Respondent-Father; (6) failed to adequately furnish her apartment; (7) failed to complete her parenting classes; and (8) was fired from multiple jobs due to attendance issues. Moreover, most of the limited progress cited by the trial court in these findings did not occur until after DHHS filed its termination petition. Respondent-Mother does not challenge these findings.
 

 The DHHS social worker also offered the following testimony during the termination hearing with respect to repetition of neglect:
 

 Q Now, would you advise the Court how the respective parents have contributed to the conditions that led to the removal of the child?
 

 A Engaging in domestic violence, not addressing the mental health and substance issues, failing to comply with the safety plan and services meant to address the risk to the child.
 

 Q And the conditions that led to removal, do they continue to exist at this time?
 

 A Yes.
 

 Q And if you would describe the impact that the parents['] actions or inactions in this case have had on the juvenile?
 

 ...
 

 A The mother's continued denial of domestic violence, their continued meeting and minimizing the issues that brought the child into-into care continue to place the child at risk.
 

 Q So if the-if the juvenile were to be returned to either parent today, would the abuse or neglect likely continue or be repeated?
 

 A Yes. If they can't admit that there's a problem, they can't change the behavior.
 

 The social worker's testimony, when considered in conjunction with the court's findings regarding Respondent-Mother's lack of significant progress on her case plan, provided sufficient support for the trial court's determination there would be a probable repetition of neglect if
 
 *639
 
 Mary was returned to her care. Accordingly, the trial court properly terminated Respondent-Mother's parental rights on the ground of neglect.
 

 Since we conclude termination on this ground was proper, we need not address Respondent-Mother's arguments regarding the remaining grounds found by the trial court.
 
 See
 

 In re Taylor
 
 ,
 
 97 N.C. App. 57
 
 , 64,
 
 387 S.E.2d 230
 
 , 233-34 (1990) (citation omitted) (stating a finding of any of the separately enumerated grounds is sufficient to support termination). The portion of the trial court's order terminating Respondent-Mother's parental rights is affirmed.
 

 B. Respondent-Father's Appeal
 

 Counsel for Respondent-Father filed a no-merit brief on his behalf, pursuant to N.C.R. App. P. 3.1(d), stating "[t]he undersigned counsel has conducted a conscientious and thorough review of the record on appeal. After this review, counsel concludes that the record contains no issue of merit on which to base an argument for relief and the appeal would be frivolous." Counsel asks this Court to conduct an independent review of the record for possible error. Additionally, counsel demonstrated he advised Respondent-Father of his right to file written arguments with this Court and provided him with the documents necessary to do so. Respondent-Father failed to file his own written arguments.
 

 Consistent with the requirements of Rule 3.1(d), counsel directs our attention to the issue of whether the ground of neglect was sufficiently supported by the trial court's findings of fact. However, counsel acknowledges he cannot make a non-frivolous argument that Respondent-Father's parental rights should not be terminated on the ground of willful failure to pay a reasonable portion of the cost of Mary's care. As a result, his argument as to neglect does not provide a meritorious basis for appeal.
 
 See
 

 Taylor
 
 ,
 
 97 N.C. App. at 64
 
 ,
 
 387 S.E.2d at 233-34
 
 (citation omitted).
 

 After careful review, we are unable to find any possible prejudicial error by the trial court. As acknowledged by Respondent-Father's counsel, the termination order includes sufficient findings of fact, supported by clear, cogent, and convincing evidence, to conclude at least one statutory ground for termination existed. Moreover, the court made appropriate findings on each of the relevant dispositional factors and did not abuse its discretion
 
 *375
 
 in assessing the child's best interests. N.C. Gen. Stat. § 7B-1110(a) (2015). Accordingly, we affirm the portion of the trial court's order terminating Respondent-Father's parental rights.
 
 *640
 

 IV. Conclusion
 

 For the foregoing reasons, we affirm the trial court's order terminating Respondent-Parents' parental rights.
 

 AFFIRMED.
 

 Judge DILLON concurs.
 

 Judge MURPHY concurring in part and concurring in the result in part.
 

 MURPHY, Judge, concurring in part and concurring in the result in part.
 

 I concur in the Majority's opinion as it relates to Respondent-Father, and I concur in the result as it relates to Respondent-Mother. The Majority correctly states that "[a] parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." However, I do not agree that the Respondent-Mother's actions after the initial finding of neglect indicate that she has failed to make progress. She made significant progress to improve her condition and express her love for her child, and the findings of fact do not support the conclusion that her parental rights should be terminated in accordance with N.C.G.S. § 7B-1111(a)(1). Further, given her limited income, her small payments of child support for Mary were not unreasonable and grounds do not exist to terminate her parental rights in accordance with N.C.G.S. § 7B-1111(a)(3).
 

 The findings of fact, however, do support the trial court's conclusion that grounds existed to terminate Respondent-Mother's parental rights in accordance with N.C.G.S. § 7B-1111(a)(6).
 

 The court may terminate the parental rights upon a finding ... [t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
 

 N.C.G.S.§ 7B-1111(a)(6)(2017).
 

 *641
 
 Respondent-Mother continues to struggle with mental health issues that will not be corrected in the foreseeable future, and she is incapable of providing for the proper care and supervision of Mary, a dependent juvenile. She also lacks an alternative child care arrangement. The trial court's findings of fact support this conclusion of law. Therefore, I concur in the result reached by the Majority in affirming the termination of Respondent-Mother's parental rights to Mary.
 

 [1]
 

 The parties stipulated to this pseudonym for the minor child, pursuant to N.C.R. App. P. 3.1(b) (2017).
 

 [2]
 

 Respondent-Mother stipulated to the allegations in the DHHS petition and consented to the adjudication.
 

 [3]
 

 The court entered an amended permanency planning order on 17 January 2017, but this did not materially change the substance of the order.