An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-444

Filed 18 February 2026

Yadkin County, No. 24JT000029-980

IN THE MATTER OF: C.H.B.

Appeal by respondent from order entered 31 January 2025 by Judge Donna L. Shumate in Yadkin County District Court. Heard in the Court of Appeals 29 January 2026.

> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for respondent-appellant-mother.*
>
> *No brief filed for petitioner-appellee-father.*

FLOOD, Judge.

Respondent-Mother appeals from the trial court's order terminating Respondent's parental rights for willfully abandoning her minor child. On appeal, Respondent argues the trial court's findings of fact are unsupported by competent evidence, and the order should be reversed. Upon careful review, we conclude the trial court properly terminated her parental rights.

## I. Factual and Procedural Background

Respondent and Petitioner-Father are the biological parents of Curt,[1] a minor child born on 22 April 2021. When Curt was born, the parties were not married, but were residing "together in [Petitioner's] parents' home[.]" The parties lived together until 6 October 2021, when Respondent "left the parties['] residence in [Petitioner's] van and took the child to her father's home in Sparta, North Carolina[.]"

On 7 October 2021, Respondent "tried to kill herself[,]" and she "admitted to family to using methamphetamine." Respondent was involuntarily committed and later discharged on 15 October 2021. When she was released, it was recommended that Respondent seek mental health medical treatment.

Petitioner subsequently filed an ex-parte custody complaint seeking temporary sole physical and legal custody of Curt. In his complaint, Petitioner alleged that Respondent left him so that she could be with her boyfriend, Shawn Elliot Billings, who has pending charges against him in South Carolina, and that Petitioner "believe[d] that [Respondent] is abusing illegal substances, specifically methamphetamine, as well as having mental health issues which [Petitioner] believes are untreated[.]" The trial court granted Petitioner temporary custody on 4 November 2021.

On 2 December 2021, the trial court reviewed the ex-parte order and heard arguments by the parties. The trial court found that Respondent "continues to use

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading pursuant to N.C. R. Civ. P. 42(b).

drugs since her involuntary commitment [] as she made admissions that she used the drug methamphetamine on at least two occasions since her release . . .”; “has not worked at a job since approximately September of 2020”; and “currently resides with her father[.]” Even so, the trial court acknowledged it “ha[d] no information about [Respondent's] father, the condition of the home [Respondent] lives in with her father, her father's stability or the stability of the home[.]” Additionally, the trial court found that Respondent's boyfriend, Billings, “has pending charges in South Carolina for Abuse/To Inflict Great Bodily Injury Upon a Child, the injury alleged being a fracture to a child's skull”; Respondent “knew of this charge but believed Billings when he told her he was not responsible for the injury”; Respondent “made no independent inquiry in to the facts of the charge”; and Respondent “allowed Billings to be in the presence of [Curt].” The trial court then entered a temporary order, ruling it was in the best interest of Curt that Petitioner have “temporary sole legal and physical custody of the child . . . until further Order of the Court” and that Respondent “may have supervised visitation with the minor child, . . . at Our House . . . .”[2]

Respondent attended her supervised visits with Curt at Our House until 22 November 2022, at which point Our House paused visitation for a minimum of ninety days. Our House explained, in part:

> In our Supervised Visitation Agreement, under section

---

[2] Our House is a non-profit organization in Wilkesboro, North Carolina that “coordinates investigation, evaluation, counseling, and court agency advocacy in child abuse cases[.]” https://business.wilkeschamber.org/list/member/our-house-child-abuse-prevention-team-capt-1019.

> Visit Rules and Procedures item 10 states: "The visit monitor is responsible for ending a visit if the visiting child is inconsolable for 10 minutes during the visit. The custodial party will be contacted to remove the child from the visit." [Curt] has now had four visitations where the visit monitor has had to remove him from the visitation and release him back to the custodial party due to him being inconsolable.

> The Child Abuse Prevention Team / Our House board members have decided that it is in the best emotional interest of the child to pause visitation at this time. The custodial party for [Curt] has informed [the Child Abuse Prevention Team] / Our House that they are working with a child's counselor to conclude what is best for [Curt] regarding visitation. The counselor has also reached out to the Executive Director at [the Child Abuse Prevention Team] / Our House for visitation notes. The counselor stated that she would like to evaluate [Curt] and [Respondent] together. Executive Director provided the counselor with the information she requested.

Respondent did, however, visit with Curt on Thanksgiving and Christmas that year, with Curt's paternal grandmother supervising.

Following the pause from Our House, Curt was evaluated and attended at least one counseling session until 20 March 2023 when Petitioner discontinued the counseling services. The visits at Our House were not restarted.

In April 2023, Respondent asked Petitioner if she could see Curt for his birthday but contends she "was told no [by Petitioner] because it wasn't Court ordered." Several months later, Respondent reached out to Petitioner's wife to try to set up visits with Curt for Thanksgiving and Christmas but was denied and told that "if I wanted visitation, I had to go through Our House and reestablish visitation." On

31 December 2023, Respondent did inquire of Petitioner's wife as to how Curt's Christmas went. Respondent did not reach out to Petitioner or Petitioner's wife again, and the Record does not reflect that Respondent ever subsequently contacted Our House.

On 24 May 2024, Petitioner filed a petition seeking Respondent's parental rights to be terminated. On 31 January 2025, the trial court entered an order adjudicating Curt to be a willfully abandoned and neglected minor child (the "Adjudication Order"). The trial court found, in relevant part:

> 31. There has been no contact between the [Respondent] and the child since Christmas 2022. The Respondent [] did have the ability to participate in phone calls with the child. The [Respondent] felt like those were not meaningful and disconnected those phone calls, even though there is no evidence that anyone cut off those phone calls other than the Respondent [] herself;
> . . . .
>
> 39. The Respondent [] has abandoned the child;
>
> 40. Specifically in that six-month period immediately preceding the filing of the Termination of Parental Rights action, there has been no contact between [Respondent] and minor child, and in fact, not since December 2022. During that period there has been no evidence of visits, mail, gifts, electronic communication or phone calls;
>
> . . . .
>
> 42. That Respondent has had the ability to maintain personal contact, love, and affection with the minor child and has had the ability to emotionally support the minor child. Respondent has willfully failed and refused to do so[.]

The trial court then entered an order terminating Respondent's parental rights that same day (the "Disposition Order"). Respondent timely appealed these orders.

## II. <u>Jurisdiction</u>

This Court has jurisdiction over an appeal by a non-prevailing parent from an order terminating her parental rights pursuant to N.C.G.S. §§ 7A-27(b)(2) and 7B-1001(a)(7) (2023).

## III. <u>Standard of Review</u>

This Court reviews a termination of parental rights order to determine "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re M.J.S.M.*, 257 N.C. App. 633, 636 (2018) (citation omitted). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." *Id.* (citation omitted). Further, "[e]ven where there is evidence in the record to the contrary, if the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal." *In re A.N.B.*, 290 N.C. App. 151, 168 (2023) (citation modified).

This Court reviews de novo a trial court's conclusions of law. *See In re K.J.M.*, 288 N.C. App. 332, 339 (2023). "Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citation omitted).

## IV. <u>Analysis</u>

On appeal, Respondent argues the trial court erred in concluding that Respondent willfully abandoned Curt. Specifically, Respondent contends several findings of fact are unsupported by competent evidence and that her visits with Curt in 2022, her requests to visit Curt in 2023, and her text about Curt's Christmas in 2023 show that she did not willfully abandon her son. Instead, Respondent argues "Petitioner actively thwarted her attempts to see Curt." We disagree.

A trial court may terminate parental rights under N.C.G.S. § 7B-1111(a)(7) if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition [to terminate parental rights.]" N.C.G.S. § 7B-1111(a)(7) (2023). "In the context of abandonment, willfulness is more than an intention to do a thing; there must also be purpose and deliberation." *In re D.M.O.*, 250 N.C. App. 570, 572–73 (2016) (citation, internal quotation marks, and brackets omitted). "The most frequently approved definition is that abandonment imports any willful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *In re C.K.I.*, 379 N.C. 207, 210 (2021) (citation omitted). "Although the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *Id.* (citation omitted). "If a parent withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and

maintenance, such parent relinquishes all parental claims and abandons the child."

*In re J.D.C.H.*, 375 N.C. 335, 338 (2020) (citation and brackets omitted).

Respondent first challenges Findings of Fact 15, 25, 26, 30, 40, and 42 in the Adjudication Order:

> 15. Respondent shows no interest in maintaining a consistent relationship with the minor child;
>
> . . . .
>
> 25. Our House . . . sent a letter to the Respondent [] recommending that the child engage in counseling, and that the visits be suspended for ninety (90) days. Then the [Respondent] could at that point ask to have the Our House visits be reconsidered;
>
> 26. The Respondent [] never contacted Our House again. Respondent did not do anything to re-instate those visits. Respondent [] did not inquire who the counselor was or how to be involved with that counseling;
>
> . . . .
>
> 30. In the six-month period leading up to the filing of the Petition, and in fact, since December 2022, the Respondent [] has not provided any support for the minor child either financially or emotionally;
>
> . . . .
>
> 40. Specifically in that six-month period immediately preceding the filing of the Termination of Parental Rights action, there has been no contact between [Respondent] and minor child, and in fact, not since December 2022. During that period there has been no evidence of visits, mail, gifts, electronic communication or phone calls;
>
> . . . .

> 42. That Respondent has had the ability to maintain personal contact, love, and affection with the minor child and has had the ability to emotionally support the minor child. Respondent has willfully failed and refused to do so[.]

Respondent argues "[t]he plenary evidence shows [she] tried to use relative supervisors to visit Curt on his birthday, on Thanksgiving, and on Christmas, all in 2023 and all visits were refused by Petitioner." Respondent further contends that the letter sent to her from Our House "clearly established that Curt's therapist and the visitation center staff would determine when visits would begin again[,]" such that "the letter plainly stated [Respondent] had no authority to restart visits[,]" and "there is no record evidence that [she] ever even knew the therapist's name and contact information." She argues this "impermissibly shift[s] the burden to [Respondent] to disprove termination grounds[,]" such that she "should have gotten therapy for herself or for her son Curt to satisfy the visitation center's need for a therapeutic recommendation . . . or [] that [Respondent] could have or should have filed a motion for contempt or a motion to modify the civil custody orders for more visitation."

Our appellate courts have upheld that findings pertaining to a respondent parent's failure to take action—not just a parent's affirmative acts—constitute a proper basis for the termination of parental rights. *See In re Apa*, 59 N.C. App. 322, 324 (1982) (holding the trial court did not err in concluding the minor child was abandoned where the respondent-father "made no other significant attempts to establish a relationship with [the minor child] or obtain rights of visitation with [the

minor child,]" "except for an abandoned attempt to negotiate visitation and support"); *see also In re I.R.M.B.*, 377 N.C. 64, 72 (2021) (finding grounds of abandonment where the respondent-father was aware of his ability to seek legal custody and visitation rights but took no action during the determinative six-month period).

In *In re A.L.S.*, the respondent-mother argued she did not willfully abandon her minor child where she did not have visitation rights, and the petitioners prevented her from seeing her minor child. 374 N.C. 515, 521 (2020). Our Supreme Court upheld the trial court's termination of the respondent-mother's parental rights, explaining that, "[w]hile there was evidence of ill will between [the] petitioners and [the] respondent-mother, this Court has held that 'a parent will not be excused from showing interest in [the] child's welfare by whatever means available.'" *Id.* at 522 (quoting *In re C.B.C.*, 373 N.C. 16, 20 (2019)). The Court held that the "[r]espondent-mother's failure to even attempt any form of contact or communication with [the minor child] gives rise to an inference that she acted willfully in abdicating her parental role, notwithstanding any personal animus between her and [the] petitioners." *Id.* Further, the Court reasoned that, "[a]lthough the 2016 custody order did not give [the] respondent-mother a right to visitation, the order in no way prohibited [the] respondent-mother from contacting [the minor child]." *Id.* The Court further explained that the trial court had found the "'respondent-mother never sought to modify that custody order' in order to gain visitation rights." *Id.; see also In re A.N.B.*, 290 N.C. App. at 169 (holding the trial court did not err in terminating

father's parent rights for willful abandonment where, although prohibited "from engaging in visitation[,]" father was not prohibited from "contact entirely" and "had the option to seek modification of the . . . [o]rder to reinstate specific visitation, but he failed to take any action to do so").

Here, the trial court found—and Respondent does not challenge—that Respondent "has had no physical visitation with the minor child since on or around December 2022" (Finding of Fact 14); "never sent the minor child any cards or letters since on or around December 2022" (Finding of Fact 16); "has not provided the minor child any [b]irthday gifts since on or around December 2022" (Finding of Fact 17); "has not sent the minor child any type of written communication, either by mail, electronic communication or by phone call since on or around December 2022" (Finding of Fact 18); "has not provided the Petitioner any items needed for the minor child such as clothing, shoes, school supplies, or any other personal items" (Finding of Fact 19); and "has not provided any financial support for the minor child at least since December 2022" (Finding of Fact 20).

Further, Respondent has not challenged Findings of Fact 27, 29, and 31, which provide:

> 27. The Court specifically finds that it was not incumbent upon Respondent [] to go to counseling herself, but at least there would have been a voice in counseling for the child, but she did not do so;
>
> . . . .

29. That the Respondent [] represented herself in the initial custody action Yadkin County file number 21-CVD-632, and had an avenue available to her to file a motion asking for a modification of that order, but did not do so;

. . . .

31. There has been no contact between the [Respondent] and the child since Christmas 2022. The Respondent [] *did have the ability* to participate in phone calls with the child. The [Respondent] felt like those were not meaningful and disconnected those phone calls, even though there is no evidence that anyone cut off those phone calls other than the Respondent [] herself[.]

(emphasis added).

These unchallenged findings, deemed binding on appeal and supported by competent evidence, *see In re M.J.S.M.*, 257 N.C. App. at 636, in turn support the trial court's Findings of Fact 15, 30, 40, and 42 that Respondent, even without physical visitation, did not show an interest in maintaining a "consistent relationship" with Curt where Respondent did not contact Curt—either by phone calls, letters, or electronic communication—within the six-month determinative period, nor did Respondent provide Curt with any emotional or financial support by way of gifts or other material support. Further, the trial court found that Respondent failed to take the affirmative action of seeking a modification of the custody order or contacting Our House. As our Supreme Court has held, Respondent "will not be excused from showing interest in [the] child's welfare by whatever means available." *See In re A.L.S.*, 374 N.C. at 522. Thus, we conclude Respondent's challenged findings

of fact are supported by competent evidence, and this argument is overruled.

Respondent further argues, in a footnote:

> [A]ll of the court's findings or conclusions related to a lack of contact or willful abandonment or termination ground are unsupported. ([Findings of Fact] #39, #42[,] #44, #45, #46[, and Conclusion of Law] #2) Similarly, the court's findings that termination of [Respondent]'s rights would be in Curt's best interest are also unsupported. ([Findings of Fact] #47, #48, #49; p 46, #35[, and] #35)

As we have discussed Finding of Fact 42, we address only Findings of Fact 39, 44, 45, 46, 47, 48, 49 and Conclusion of Law 2 from the Adjudication Order and Finding of Fact 35 from the Disposition Order. These challenged findings and the conclusion from the Adjudication Order provide:

> 39. The Respondent [] has abandoned the child;
>
> . . . .
>
> 44. That the Respondent shows a settled purpose to forego all parental duty and parental claims to the child;
>
> 45. That facts exist as set out above which warrant the termination of Respondent's parental rights to the juvenile pursuant to N.C.G.S. § 7B-1111 and that the Petitioner seeks to have Respondent's parental rights remitted on the following grounds:
>
> > a. [N.C.G.S. §] 7B-1111(a)(1) That the juvenile was neglected;
> >
> > b. [N.C.G.S. §] 7B-1111 (a)(7) That the juvenile was willfully abandoned by the Respondent for at least six (6) consecutive months immediately preceding the filing of this petition;

46. That the Respondent is both subject to termination of her parental rights pursuant to [N.C.G.S.] § 7B-1111 (a)(1), and [N.C.G.S.] § § 7B-1111(a)(7);

47. That it is in the best interest of the juvenile that Respondent's parental rights to the juvenile be terminated based on the above allegations and pursuant to [N.C.G.S.] § 7B-1110;

48. That the Petitioner has provided, and will continue to provide, a safe and stable home for the juvenile and the termination of Respondent's rights is in the best interest of the juvenile;

49. Termination of the Parental Rights of [Respondent] will give permanence and provide stability for the child;

. . . .

2. Grounds exist to terminate the parental rights of [Respondent] to [Curt], born on April 22, 2021, to wit:

> A. Respondent has neglected the minor child, [Curt], born on April 22, 2021, pursuant to N.C.G.S. § 7B-1111(a)(1), in that she has failed to provide to the minor child proper care, supervision, or discipline, has abandoned the minor child, and has failed to provide necessary medical care or remedial care.

> B. Respondent has willfully abandoned the minor child, [Curt], born on April 22, 2021, pursuant to N.C.G.S. § 7B-1111(a)(7) in that she has failed to exercise visitation or have a meaningful presence in the minor child's life.

Additionally, challenged Finding of Fact 35 from the Disposition Order provides: "Granting the termination requested will aid in achieving permanence for the minor child and serve his best interests going forward."

As discussed, however, the trial court's binding findings of fact—that Respondent has failed to contact Curt, provide any emotional or financial support to Curt, or take affirmative action within her ability—support the trial court's findings and conclusions that Respondent has willfully abandoned Curt "for at least six consecutive months immediately preceding the filing" of Petitioner's petition pursuant to N.C.G.S. § 7B-1111(a)(7) where Respondent withheld "[her] presence, [her] love, [her] care, the opportunity to display filial affection, and willfully neglect[ed] to lend support and maintenance[.]" *In re J.D.C.H.*, 375 N.C. at 338; *see also In re M.J.S.M.*, 257 N.C. App. at 636. Accordingly, we conclude the trial court's findings of fact support its conclusion of law that grounds existed to terminate Respondent's parental rights under N.C.G.S. § 7B-1111(a)(7). *See In re J.D.C.H.*, 375 N.C. at 338.

In another footnote, Respondent also argues that "[t]o the extent this Court considers the trial court's conclusion of the [N.C.G.S. §] 7B-1111(a)(1) ground as neglect rather than neglect by abandonment, it is also unsupported." Because a trial court may terminate parental rights as long as one ground is met under N.C.G.S. § 7B-1111(a), and we conclude, under our de novo review, that the trial court properly determined that Respondent willfully abandoned Curt under N.C.G.S. § 7B-1111(a)(7), we need not address Respondent's additional argument as to neglect. *See In re P.L.P.*, 173 N.C. App. 1, 8 (2005) (determining that "where the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate

court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds" (citation and internal quotation marks omitted)).

## V. **Conclusion**

Upon careful review, we conclude the trial court's findings of fact were supported by competent evidence, and thus, the trial court properly terminated Respondent's parental rights.

AFFIRMED.

Judges COLLINS and MURRY concur.

Report per Rule 30(e).