An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-874

Filed 1 April 2026

Randolph County, Nos. 23JA000110-750, 23JA000111-750

IN THE MATTER OF: C.N.D., J.A.D.

Appeal by respondent-mother from order entered 13 June 2025 by Judge Robert Wilkins in Randolph County District Court. Heard in the Court of Appeals 11 March 2026.

*Jason R. Page for appellant-respondent-mother.*

*Chrystal Kay for petitioner-appellee Randolph County Department of Social Services.*

*Parker, Poe, Adams & Bernstein LLP, by R. Bruce Thompson II, for the Guardian Ad Litem.*

ARROWOOD, Judge.

Respondent-mother ("Mother") appeals from the trial court's order terminating her parental rights to her sons Chris and James.[1] Counsel for Mother has filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate

---

[1] Pseudonyms are used to protect the identities of the minor children.

Procedure. Counsel for Mother notified his client that a no-merit brief has been filed, and Mother has not submitted any written arguments to this Court. For the following reasons, we affirm the trial court's order.

## I.   Background

On 2 July 2023, the Randolph County Department of Social Services ("RCDSS") received three child protective service ("CPS") reports. The reports alleged that Chris, who was three months old at the time, had been transported to the hospital because he had fallen on to the floor while seated in a car seat during a physical altercation between Mother and the children's biological father ("Father"). Mother then left the hospital with Chris against medical advice and they were later found by the Asheboro Police Department in a nearby creek. Chris was partially submerged in the water and had ticks on his body. The Asheboro Police also had concerns about drug use and domestic violence in the home. Related to these events, Mother was charged with child endangerment on 2 July 2023. Chris was taken back to the hospital and later discharged to Father.

On 28 August 2023, RCDSS received another CPS report alleging that Mother had entered Father's home in the middle of the night and tried to take Chris from him. Mother scratched Father on the arm and in the process scratched Chris. Law enforcement responded to the incident and Mother was arrested and charged with child abuse and breaking and entering. While Mother was incarcerated, RCDSS

interviewed her to discuss CPS reports that Mother had used cocaine, methamphetamine, and suboxone while caring for the children. Mother disclosed that she had recently used methamphetamines. Mother had undergone several substance abuse treatments in the past.

On 12 September 2023, while the children were placed with Father, RCDSS received a CPS report alleging that James, then six years old, arrived at school smelling strongly of marijuana. On 5 October 2023, Father was arrested for failure to appear, possession of marijuana, and possession of methamphetamines. That same day, RCDSS asked both parents to make a safety placement for the children but neither could identify a relative or non-relative who could be approved to take the children.

RCDSS filed juvenile petitions on 6 October 2023 alleging that Chris and James were neglected and dependent. Nonsecure custody orders were entered that same day. The children were adjudicated neglected and dependent following a hearing on 6 December 2023. On 2 January 2024, the court continued DSS custody and ordered a case plan for Mother that included completing and following the recommendations of a psychological evaluation, substance abuse assessment, mental health assessment, domestic violence offender's class, and parenting classes. Additionally, the court ordered that Mother refrain from abusing impairing substances, submit to random drug screens by RCDSS and obtain and maintain verifiable income that is substantial enough to support the children.

Mother received medication assistance and completed parenting classes. Mother also began attending Daymark Recovery Services for care management, transportation, and housing issues, but did not attend any of the mental health or substance abuse counseling she was referred to. Mother also did not attend any psychological evaluations, despite several being scheduled by RCDSS. While Mother did complete several drug screens through her medication assistance provider, she did not take the drug screens requested by RCDSS. Mother also did not complete a batterer offender program that was approved by RCDSS.

Mother acquired housing and provided RCDSS with her address and the first and last page of her lease. However, Mother would not let RCDSS assess her new home. Mother reported that she had several jobs including cleaning and babysitting but did not provide verification to RCDSS and did not contribute to the children's cost of care while they were in foster care. Mother attended 30 of the 53 visits scheduled with the children. During the visits, Mother was affectionate, but did not display the skills she learned in her parenting classes. For example, she brought gumballs to a visit which is a choking hazard to Chris. Additionally, Chris and James both exhibited distress during and after visits with Mother. Chris would often stand at the window or the door during the visits and point to his foster mother's car saying "mama." After the visits, he became despondent and tearful, clinging to his foster mother for the rest of the day. James was resistant to leave his foster mother and go

into the room for visitation. After the visits, he would regress in behavior and potty training.

Meanwhile, the trial court held Permanency Planning hearings on 15 May 2024 and 27 November 2024. Following the second hearing, the court modified the permanent plan to adoption. RCDSS filed a motion to terminate parental rights on 3 February 2025 alleging grounds under N.C.G.S. § 7B-1111(a)(1), (2), (3), and (6) for neglect, willfully leaving the minor child in foster care for more than 12 months, willfully failing to pay for a portion of costs of care while in foster care, and dependency, respectively. Father relinquished his parental rights. Mother was appointed a Guardian Ad Litem.

Mother was not present at the termination hearing. The court found that there were grounds to terminate based on all grounds alleged in the petition. After a disposition hearing, the court found that it is in the children's best interest to terminate Mother's parental rights. Mother filed notice of appeal to this Court on 8 July 2025.

## II. Discussion

Mother's counsel filed a no-merit brief after conducting "a conscientious and thorough review of the record on appeal." Counsel notified Mother that a no-merit brief has been filed, and Mother has not submitted any additional written arguments to this Court. Pursuant to Rule 3.1(e), counsel proposed four issues for this Court to consider on review: 1) whether the findings of fact were supported by clear, cogent,

and convincing evidence; 2) whether the trial court erred by finding and concluding that grounds existed to terminate Mother's parental rights; 3) whether the trial court abused its discretion in terminating Mother's parental rights; and 4) whether Mother's counsel was ineffective by not requesting a continuance in the hearing on the motion to terminate.

### A.    Termination of Parental Rights

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). Unchallenged findings of fact made by the trial court are binding on appeal. *In re Z.V.A.*, 373 N.C. 207, 211 (2019). "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion. '[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *In re A.U.D.*, 373 N.C. 3, 6 (2019) (internal citations omitted).

"[A] finding of only one ground is necessary to support a termination of parental rights[.]" *In re A.R.A.*, 373 N.C. 190, 194 (2019). One such ground is neglect. N.C.G.S. § 7B-1111(a)(1) (2025). A neglected juvenile is defined, in relevant part, as a juvenile whose parent "[d]oes not provide proper care, supervision, or discipline" or "[c]reates or allows to be created a living environment that is injurious to the

juvenile's welfare." N.C.G.S. § 7B-101(15). Termination of parental rights may be "based on neglect that is currently occurring at the time of the termination hearing" or, if the child has not been in the custody of the parent for a significant time prior to the termination hearing, "a likelihood of future neglect by the parent." *In re B.R.L.*, 379 N.C. 15, 21 (2021).

"When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.G.J.*, 378 N.C. 500, 509 (2021) (quoting *In re R.L.D.*, 375 N.C. 838, 841 (2020)). Additionally, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* (quoting *In re Ballard*, 311 N.C. 708, 715 (1984)). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.J.S.M.*, 257 N.C. App. 633, 637 (2018) (citation omitted).

After a trial court finds at least one grounds for termination of parental rights, it proceeds to the dispositional phase in which it determines whether termination is in the best interests of the child. *See In re A.U.D.*, 373 N.C. at 6. In making that determination, the trial court must consider:

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> (4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.

N.C.G.S. § 7B-1110.

Here, Mother did not challenge any findings of fact. Accordingly, all of the trial court's findings of fact are binding on appeal. The trial court's findings of fact support the trial court's conclusion that there were grounds to terminate on neglect. Mother's failure to make reasonable progress on her case plan indicated that circumstances had not changed and there was a high likelihood of future neglect. Mother's substance abuse and mental health played important roles in the prior neglect of the children, yet Mother did not complete her drug screens or her mental health or substance abuse counseling. Additionally, RCDSS could not verify whether Mother had sufficient income or could provide safe and stable housing for the children. Even where Mother did complete her case plan requirement of taking parenting classes, she did not implement those skills during her visitations. Thus, the trial court did not err in concluding that there were grounds to terminate parental rights based on neglect.

Since only one ground is needed in order to terminate parental rights, we do not consider whether the trial court erred in concluding that there were also grounds based on willfully leaving the children in foster care for 12 months, willfully failing to pay a reasonable portion of the cost of care, or dependency.

The trial court's findings also support its conclusion that it was in the children's best interest to terminate Mother's parental rights. The trial court made dispositional findings addressing each of the criteria in N.C.G.S. § 7B-1110(a) to support its finding that termination of parental rights was in the children's best interest. The trial court found that the children were young, had a minimal bond with Mother, a strong bond with their foster parents, and a high likelihood that they would be adopted by their foster parents or another family. Additionally, the trial court had previously modified the permanent plan to adoption, so termination of parental rights and adoption by the foster family would aid in the accomplishment of that permanent plan. The trial court's findings clearly demonstrate that it considered the necessary criteria and performed a reasoned analysis. Accordingly, the trial court did not abuse its discretion. *See In re J.J.B.*, 374 N.C. 787, 796 (2020).

## B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant must show that 1) their counsel's performance was deficient and 2) the deficient performance prejudiced the defense. *State v. Braswell*, 312 N.C. 553, 562 (1985). To show deficient performance, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Mother did not come to the termination hearing and her counsel did not move to continue even though he did not know why Mother was not present. However, DSS had arranged for transportation, told Mother to be ready at 8:30 a.m., and waited for her until 9:30 a.m. Thus, it is unlikely that the motion would have been granted. Furthermore, given the weight of the evidence in this case, there is not a reasonable probability that if counsel had continued the hearing, the outcome would have been different. Accordingly, Mother cannot demonstrate ineffective assistance of counsel.

## III.    Conclusion

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

AFFIRMED.

Judges STROUD and WOOD concur.

Report per Rule 30(e).