An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-922

Filed 3 June 2026

Gaston County, Nos. 22JT000270-350, 22JT000271-350, 22JT000320-350

IN THE MATTER OF: C.Z.J.T., D.M.J.T., N.D.J.T., minor children

Appeal by Respondent-Mother and Respondent-Father from orders entered 7 July 2025 by Judge Edgar F. Bogle in Burke County District Court. Heard in the Court of Appeals 20 May 2026.

> *Micah Jones, for Respondent-Appellant-Mother.*
>
> *Mercedes O. Chut, for Respondent-Appellant-Father.*
>
> *J. Edward Yeager, Jr., for Petitioner-Appellee Gaston County Department of Health and Human Services.*
>
> *Melissa Gustafson, for the Guardian ad Litem.*

ARROWOOD, Judge.

Respondent-Mother ("Mother") and Respondent-Father ("Father") appeal from Orders terminating their parental rights as to their children Camille, Desmond, and

Nya.[1]  For the following reasons, we affirm the court's Orders.

## I.  Introduction

Mother has a history of mental health issues, including diagnoses of bipolar disorder and depression.  The subject family has an extensive history with Child Protective Services, beginning when Nevada's Clark County Department of Social Services took Mother's first child D.J.J.[2] into custody on 11 January 2009 when the child was five months old, due to domestic violence between Mother and D.J.J.'s father ("Mr. S"), as well as his alcohol abuse and inability to provide appropriate care due to developmental disabilities.  D.J.J. is now permanently in the custody of her maternal great-grandmother in Las Vegas.  Soon after these events, Mother relocated to North Carolina.  Mother and Mr. S were married on or about 4 September 2010.

On 3 June 2011, the Gaston County Department of Social Services ("the Department") took custody of the child D.S., due to domestic violence and inadequate supervision, but Mother engaged in a case plan and D. S. was returned to her custody 3 January 2012.

On 26 July 2014, two-month-old S.A.J. died while sleeping in Mother's bed after she was advised to avoid co-sleeping.  An autopsy concluded the infant's cause of death was undetermined "in light of the history of unsafe sleeping conditions, with

---

[1] The parties agree to use of these pseudonyms pursuant to Rule 42(b) of the North Carolina Rules of Appellate Procedure.  *See* N.C. R. App. P. 42(b).

[2] We use initials to refer to all other individuals not at issue *sub judice*, whether adult or juvenile, both for clarity and in order to protect the privacy of all juveniles discussed herein.

risk for an asphyxia death" but identified no alternate cause. Following this death, the Department took custody of D.S. and his half-brother C.G., who were adjudicated neglected and dependent on 4 May 2015 due to Mother's substance abuse, inadequate housing, and unaddressed mental health needs. Both D.S. and C.G. were permanently placed with C.G.'s biological father.

On 17 February 2017, the children G.J. and K.B. were removed from Mother's custody and adjudicated neglected and dependent on 15 August 2017 due to her substance abuse, inadequate housing, and unaddressed mental health needs, and were later "placed in the permanent guardianship care of their placement provider." In sum, before the instant case arose, five children were permanently removed from Mother's custody, and one died in infancy following unsafe parenting.

On or about 26 July 2022, the Department became involved with the family again after a report of improper care. Mother was the primary caretaker for 4-year-old Desmond and 2-year-old Camille, and she was pregnant with another child, to be named Nya. At this time, Mr. S was the legal father of both juveniles, although Mother claimed she was not married, and his whereabouts have been unknown throughout the pendency of this case. She averred that Father was Camille's biological father but maintained she did not know who had fathered Desmond.

At the time of the report, Mother was staying with a family friend, Ms. R, who told Mother she and the children could no longer stay with her. Mother entered a safety plan wherein Desmond and Camille would stay with their paternal aunt, "Ms.

H", while Mother acquired stable housing. On 5 August 2022, Ms. H told the Department she had received no help from either Mother or Father and could not continue to care for the children, so she brought them to the Department. The Department located Mother living in a hotel room, found her to be both sober and newly employed, and relinquished the children to her care.

Three days later, Mother told the Department that until she received a paycheck the following week, the children were staying with a relative, "Ms. B", in a hotel. Between 8 August 2022 and 7 October 2022, the Department had inconsistent contact with Mother, as did Ms. B. When the children became ill, Ms. B could not obtain medical care for them because she could not get Mother's consent. Ms. B was likewise unable to receive Mother's authorization for daycare vouchers. Other than some food stamps, Mother provided no supplies or economic support during those two months. The Department took custody of Desmond and Camille on 7 October 2022.

Nya was born on 17 November 2022. Mother averred that Father is Nya's biological father. Nya's cord blood tested positive for cocaine. The Department took Nya into custody on 23 November 2022. Following genetic testing, the court entered Orders of Paternity finding that Father is the biological father of both Camille and Nya. The court entered Orders of Nonpaternity finding that Mr. S is not the father of Camille and Nya, and that Father is not Desmond's biological father. The State has received no affidavit acknowledging or purporting paternity as to Desmond.

All three children were adjudicated neglected and dependent. The court

ordered both Father and Mother to comply with random drug screens, complete a dual mental health and substance abuse assessment and follow treatment recommendations, obtain and maintain safe housing and employment, complete parenting classes, and refrain from criminal activity.

Maurika McMahan ("Ms. McMahan"), the family's social worker from October 2022 until April 2023, testified that during this period, Mother acquired housing and employment and completed parenting classes. However, Mother was terminated from her substance abuse program after being charged with driving while intoxicated in April 2023. On 25 July 2023, she completed another substance abuse assessment but did not participate in the recommended intensive outpatient program. She was convicted of Driving While Impaired on 23 October 2023.

Ms. McMahan testified that Father did not provide proof of employment other than "snapshots of cash app[.]" Father was charged with Assault on a Female and Resisting a Public Officer on 2 July 2023 and was convicted on 4 August 2023. Father tested positive for cocaine or marijuana on the majority of his completed drug screens and did not make himself available for any drug screens following 24 October 2023.

Nevertheless, the Department reported that both parents were making progress on their case plans until April 2024. Father completed a substance abuse and mental health assessment as well as substance abuse treatment. Likewise, Mother completed another mental health and substance abuse assessment as well as the recommended treatment. However, between November 2022 and June 2024,

Mother refused at least seven of the 26 requested or ordered drug screens and repeatedly tested positive for cocaine, including three positive results after completing substance abuse treatment.

Mother gave birth to another child, L.T., on 9 December 2023. Mother has averred that Father is the child's biological father; Mr. S is the legal father of L.T. The Department took custody of L.T. on 9 April 2024. Mother reported that Father had locked her out of their home. On 2 April 2024, police observed her climbing through the window and found that L.T. had been alone inside for some time. L.T. was evaluated by the child maltreatment team at Levine Children's Hospital, who reported to the Department that he had knots and bruises on his head and forehead, a high fever, lethargy, extreme dehydration, and sunken flesh around his eyes. L.T. was unable to eat, suck a pacifier, or follow light with his eyes. The court found that the infant was in an "altered state of consciousness" when found. Police reported that Mother was impaired and slurring her words. Father denied that he had been staying in the home and testified that he and Mother were separated since he moved to his brother's home on 15 February 2024.

Between March 2024 and August 2024, Father's whereabouts were unknown and he had no contact with the Department. Mother was charged with driving while impaired and other vehicle infractions on 4 June 2024. She pled guilty and received an active sentence of 30 days. Mother and Father were charged with child abuse, severe bodily injury, in connection with L.T. on 30 July 2024 and 30 August 2024

respectively. After pleading guilty, Mother received an active sentence of between 24 and 41 months. Father's case remained pending at the time of the joint adjudicatory hearing, and he remained in Gaston County Jail with a bond amount of $500,000.00.

On 4 November 2024, the Department filed petitions to terminate Mother's parental rights as to Desmond, Camille, and Nya and Father's parental rights as to Camille and Nya.

As to Father, the court found following the adjudicatory hearing that he had "not demonstrated sobriety" and had testified to using cocaine throughout the case's pendency, that he failed to regularly attend available visits, that he "did not have stable and consistent employment or income sufficient to provide" for the children, that he "is currently incarcerated" and therefore does not have housing, and that he had been jointly responsible for L.T. and failed to ensure his proper care, which resulted in the infant's serious injuries. The court concluded he had neglected both children and willfully left them in placement outside the home for more than twelve months without showing reasonable progress to correct the conditions leading to their removal.

As to Mother, the court found that she had not demonstrated sobriety, that she admitted to cocaine use during her pregnancy with Nya, that she had repeatedly tested positive for cocaine use, that she did not avoid criminal activity, that she did not maintain stable and consistent employment "sufficient to demonstrate the ability to provide for" the children, that she is incarcerated and has failed to obtain safe and

appropriate housing, that she had pled guilty to felony child abuse, and that she would be incarcerated until August 2026. The court found the likelihood of future neglect "extraordinarily high in light of Respondent/mother's failures to correct her substance abuse issues, obtain stable and appropriate housing, obtain employment or income and her demonstrated inability to properly parent a child such that her youngest child suffered physical harm while under her care." The court concluded that she had neglected the juveniles and left them in placement outside the home for more than twelve months without showing reasonable progress to correct the conditions that led to their removal.

Accordingly, the court found it in the best interests of the juveniles to terminate Father's parental rights to Camille and Nya and Mother's parental rights to Desmond, Camille, and Nya. Father filed notice of appeal on 18 July 2025. Mother filed notice of appeal on 22 July 2025.

## II.     Discussion

### A.     Termination of Mother's Parental Rights

Mother submits a No Merit brief on appeal, in which her counsel concedes that "the record contains no issue of merit on which to base an argument for relief." In accordance with Rule 3.1(e), her counsel has identified issues that "might arguably support the appeal" and stated that each "lacks merit or would not alter the ultimate result." "[A]n independent review will be conducted of the issues identified therein." *In re L.E.M.*, 372 N.C. 396, 402 (2019).

The first issue identified is whether the trial court properly concluded that Mother neglected the children under 7B-1111(a)(1), in particular whether the trial court's conclusions were proper, in respect of the children's long absence from the home and Mother's incarceration, such that the evidence sufficed to show that a likelihood of future neglect existed at the time of the hearing. The second issue is whether, if the trial court properly found grounds to terminate Mother's parental rights existed under 7B-1111(a), any nonfrivolous arguments against the remaining ground could merit relief. The third is whether the trial court considered all factors required by 7B-1110, and if so, whether the court properly determined that termination was in the children's best interests.

1.     Standard of Review

We will affirm a court's termination of parental rights if its conclusions were supported by clear, cogent, and convincing evidence and based on proper legal grounds. *In re K.M.S.*, 380 N.C. 56, 59 (2022). Whether a particular ground for termination is supported by sufficient findings of fact is reviewed de novo, meaning this Court "considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re M.R.F.*, 378 N.C. 638, 641 (2021) (internal citations and quotations omitted). "A finding of only one ground is necessary to support a termination of parental rights." *In re A.R.A.*, 373 N.C. 190, 194 (2019). Once we conclude that the lower court's finding of one such ground was proper, "we need not review any remaining grounds." *In re J.I.G.*, 380 N.C. 747, 752 (2022).

2. <u>The Court's Finding as to the Likelihood of Future Neglect</u>

At the termination stage, when children have been separated from a parent for a long period of time, "the petitioner must prove (1) prior neglect of the child by the parent and (2) a likelihood of future neglect of the child by the parent." *In re D.W.P.*, 373 N.C. 327, 339 (2020). Here, all three children were previously adjudicated neglected in un-appealed Orders supported by clear, cogent, and convincing evidence, and the court took judicial notice of those orders and incorporated them into the Orders appealed here. Therefore, the first prong is satisfied. On the second prong, the trial court must consider "evidence of changed circumstances between the period of past neglect and the time of the termination hearing." *In re K.N.*, 378 N.C. 450, 458 (2021).

"While a respondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect, it may be relevant to the determination of whether parental rights should be terminated." *In re J.S.*, 377 N.C. 73, 79 (2021). Mother is expected to remain behind bars until August 2026 which is certainly relevant to this issue. Here, the court did not rely on this finding of fact alone to conclude that future neglect was likely. Instead, the court found that:

> [T]he likelihood of future neglect is extraordinarily high in light of Respondent/mother's failures to correct her substance abuse issues, obtain stable and appropriate housing, obtain employment or income and her demonstrated inability to properly parent a child such that her youngest child suffered physical harm while under her care.

Further, "reasonable progress could not be made in correcting the conditions that led to the custody of the juvenile in the next six (6) months."

Indeed, Mother's incarceration was a relevant but not entirely conclusive basis for these findings. Nevertheless, it supported the findings that, at the time of the hearing, conditions had changed for the worse as a whole, such that Mother's ability to obtain appropriate housing and employment was foreclosed. Further, the incarceration followed her guilty plea to felony child abuse of the children's infant sibling. Moreover, the finding that Mother failed to demonstrate sobriety is amply supported by a long record of positive drug screens throughout her case plan. Accordingly, the court properly concluded that there existed an "extraordinarily high" likelihood of future neglect.

### 3. Other Issues Raised in Mother's No Merit Brief

The remaining issues raised in Mother's No Merit brief are likewise unavailing. Because sufficient evidence supported the court's findings as to Mother's criminal conviction and inability to demonstrate sobriety or obtain housing and employment, the court properly concluded that she willfully failed to make reasonable progress in her case plan under N.C.G.S. § 7B-1111(a)(2).

Mother also concedes that "the trial court received competent evidence sufficient to satisfy" all required factors to determine the children's best interests under N.C.G.S. § 7B-1110. Once these are considered, the trial court has discretion

to determine the weight of each factor and we do not disturb its conclusion unless it was manifestly unsupported by reason. *In re I.N.C.*, 374 N.C. 542, 547–50 (2020). Following review of the transcript, the record, and the Orders, we agree that the court considered all factors and reached its conclusion reasonably without abusing its discretion. Accordingly, we affirm the court's orders terminating Mother's parental rights to Desmond, Camille, and Nya.

### B. Termination of Father's Parental Rights

Father argues that the court received insufficient evidence to support its conclusions that grounds existed to terminate his parental rights due to the likelihood of future neglect and willful failure to make reasonable progress to correct the conditions that led to the children's removal.

As in Mother's case, any alternate conclusion as to the children's prior neglect is precluded from challenge due to the prior adjudication orders. Accordingly, the court was required to conclude that there was a likelihood that the children would be neglected by Father in the future. "In predicting the probability of a repetition of neglect, the court must assess whether there is a substantial risk of future child neglect based on the historical facts of the case." *In re M.C.*, 374 N.C. 882, 889 (2020) (cleaned up). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870 (2020) (quoting *In re M.J.S.M.*, 257 N.C. App. 633, 637 (2018)).

Here, the court heard extensive evidence that Father failed to comply with the

conditions of his case plan. He admitted that he continued to use cocaine while the children were in the Department's custody and failed drug screens. The court also heard testimony sufficient to show that he failed to provide the Department with any required proof that he maintained independent housing, ongoing employment, and adequate income. He also went months without contacting the Department or visiting the children despite the ability to do so.

Further, at the time of the hearing, Father was incarcerated on pending child abuse charges in relation to the children's infant sibling, and Father does not challenge the court's finding that "[d]ue to the pending charges, it is not known when Respondent/father will again be available outside of the incarcerated setting to again work on his case plan and work toward reunification." "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). This finding, accompanied by the court's overwhelming evidence that Father was not in compliance with his case plan, properly supports the finding that "even if released today, reasonable progress cannot be made in correcting the conditions that led to the custody of the juvenile in the next six (6) months[.]"

Accordingly, the fact of Father's incarceration was not the sole factor the court considered in concluding that there was a likelihood of future neglect. The court made other critical findings, supported by sufficient evidence, in coming to this conclusion. Therefore, the court properly concluded this ground for termination of his parental

rights existed at the time of the hearing. Because only one ground is sufficient, we affirm the court's Orders terminating Father's parental rights to Camille and Nya.

### III.     Conclusion

For the above reasons, we affirm the trial court's Orders terminating Mother's parental rights to Desmond, Camille, and Nya, and Father's parental rights to Camille and Nya.

AFFIRMED.

Judges GRIFFIN and TYSON concur.

Report per Rule 30(e).